Milligan, J.,
delivered the opinion of the court:
This action is prosecuted to recover $230,400, damages, which the claimants allege resulted from breaches of a written contract, a copy of which is appended to and made a part of the original petition in this case. The sum claimed is itemized in the petition, and set down under eight distinct heads, all of' which, in the view we have taken of the case, need not be separately considered. The principal difficulty, as well as the-greater amount of damages claimed, arises on the construction of the contract.
The contract was let in the ordinary way, under public advertisements soliciting sealed proposals for the work, which were responded to by the claimants and the work regularly awarded to them. Much stress was laid in the argument on the preliminary papers leading to the written agreement, which is the foundation of this suit. On the one side, it was insisted that the advertisement and bid constitute a substantive part of the contract, and may be looked to in its construction; and on the other, this position was denied, and the subsequently written contract claimed as the only paper to which, in the absence- *506 of all uncertainty in its language, the court can look in giving-effect to the agreement of the parties.
The law requiring advertisements and proposals for public contracts, obviously was intended by Congress to invite competition among bidders, and to prevent favoritism and fraudulent combinations in awarding contracts ; but the advertisement and bid under which the contract was awarded were never supposed to constitute any part of the contract. On the contrary, the Act June 2d, 1861, (12 Stat. L., 411, § 1,) expressly requires that “ every contract be reduced to writing and signed by the contracting parties with their names at the end thereof.”
Outside of the statute, and on general principles, the written contract is the last and most deliberate act of the parties, and must be looked upon as the consummation of all previous negotiations, and the exact expression of the parties’ final purpose. No evidence external to the contract, whether written or in parol, as a general rule, is admissible in aid of the interpretation of its language, and therefore all preliminary papers passing between the parties while the contract was in fieri, are merged in the written agreement and inadmissible to contradict or vary the written agreement. (2 Parsons on Contracts, 60; 2 Kent’s Com., 11th ed., 746; 1 Greenleaf’s Evidence, 12th ed., § 275; Nash v. Towne, 5 Wall. R., 689, 703.)
Passing from this question, and dealing with the contract as the parties executed it, the first and most prominent obligation assumed by the claimants was, “to construct the piers and abutments for the new rail and wagon bridge to be built to connect Rock Island with the city of Davenport, in accordance with such plans and specifications as may be fixed by proper authority acting for the United States.”
The obligation here imposed on the claimants ex vi termini, carries with it the performance of all labor necessary to complete the construction of the piers and abutments according to the plans and specifications furnished by the officer in charge of the work.
If doubts existed as to the interpretation of this clause of the contract, they are removed by a subsequent provision, whicli sets out in terms what part the United States are to perform in the fulfillment of the contract. They are bound “ to furnish stone, cement, sand, and all necessary templets required for the work, and nothing more.”
*507 The parties having undertaken to define the reciprocal duties and obligations of each other, the law holds each bound to his own agreement. This is the rule'on general principles, and especially is it rigorously enforced when there is a positive negation of any other or further obligation in this respect on the part of the Government inserted in the contract. The maxim, -expressio unuis est exelusio alterius, applies here, and excludes everything not included in the contract.
It follows, therefore, that it was the duty of the claimants to build the coffer-dams, pump the water therefrom, and prepare the bed of the river for the piers and abutments, 'which they were bound to construct.
Next to this question, and of kin to it, arises another, which must also find its solution in the construction of the contract. It is proven that the dimensions of the piers, as indicated in' the drawings shown to the claimants before they sent in their bid for the contract, were somewhat diminished by the officer in charge of the work, after the execution of the contract, and thereby rendered less valuable to the contractors. This reduction, it is claimed, was unlawful, and entitles the claimants to damages.
It is certainly true, if the claimants undertook to do a specific piece of work, and they were wrongfully prevented from performing it according to the terms of the contract, that that would be a breach of the contract, for which the defendants -would be answerable in damages. And there is no valid distinction between the wrongful termination of a contract, and an unlawful diminution of the quantity of the work stipulated to be performed under it. Both alike work a breach, for which the law gives damages, but in unequal amounts.
But the question here presented is one of authority. Had the officer in charge of the work the power, under the contract, to make the alteration complained of? Discarding, as in the former part of this opinion, the preliminary negotiations of the parties, and looking alone to the written agreement, it seems clear that the claimants conceded this right when they executed the contract. By the very words of the agreement they bound themselves “to construct the piers and abutments in accordance with such plans and specifications as may he fixed hy proper authority acting for the United States." The right of the United States to fix the plans and specifications for the piers *508 and abutments is not disputed, and the question now to be decided is, whether or not that right was exhausted when the-specifications and drawings* were exhibited to the claimants, before they sent in their proposals for the contract. To hold that it was, would be to defeat the purpose of the after written contract, and render nugatory its leading stipulations. Such-was not the intention of the parties, nor will the language employed in the contract bear any such interpretation. It clearly has a future signification; and the claimants having conceded the right to the United States to fix the working plans and specifications, they cannot now claim its exercise worked a-, breach of the contract, for which the defendants are answerable-in damages.
Conceding the right of the United States to locate the piers- and abutments, and to furnish the plans and working draughts thereof, they could not delay the exercise of this right beyond a reasonable time. And what is a reasonable time must be determined by the court, from the facts and circumstances surrounding each case. No exact* definition can perhaps ever be-given of “reasonable time;” but it must always be that time-which preserves for each party the rights and advantages he possesses, and protects each from losses he ought not to suffer.
The contract in this case was executed on the 1st day of June,. 1869, and the work was to be completed prior to the 1st day of' December next thereafter, provided the stone was delivered by the United States at the rate of 2,000 cubic yards per month; and! in Case of any failure on the part of the G-o vernment to deliver this amount of stone, then the work to be completed as soon after the 1st of December as practicable.
The work which the claimants undertook to perform was of considerable magnitude, and they had the undoubted right immediately after the contract was executed to employ such a force upon it as would enable them to complete it, within the time limited in the contract, with the least possible expense and inconvenience to themselves. Corresponding to this right was the reciprocal duty of the defendants to locate the piers and abutments and to furnish all the necessary working plans in due and reasonable time, so as not to retard any part of the work.
The fact that the officer in charge of the work when the contract was entered into was subsequently relieved by another officer, who, under instructions from the War Department, *509 .•suspended the work until he could determine the location of the bridge, and adopt a general plan for its erection, furnishes no excuse for delaying the contractors in the lawful prosecution of the work they had undertaken. On the contrary, the delay of the Government in locating the first pier of the bridge until the 22d of August, 1809, and in furnishing the first working plan ■until the 4th of September thereafter, was unreasonable, and a palpable breach of the contract, for which the defendants are answerable in damages.
The rule of damages in such a case is precisely the same, pro tanto, as in cases where the defendants wrongfully put an end to the fulfillment of a contract. The rule in cases of this character has repeatedly been declared by the Supreme Court and strictly followed by this court. In the case of the Philadelphia, Wilmington & Baltimore Railroad v. Howard, (13 Howard’s R., 344,) the Supreme Court, after declaring that actual damages are all that can lawfully be given in an action in covenant, proceed to say: Actual damages clearly include the direct and actual loss which the plaintiff sustained propter rem ipsam non habitam, and in cases of contract like this, that loss is, fimong other things, the difference between the cost of doing the work and the price to be paid for it.” (See also Speed’s Case, 7 C. Cls. Rep., 93; Figh & Gindrat’s Case, ante.)
Estimating the damages under this rule, the witnesses, as shown in the findings of the court, fixed the amount of actual damages directly resulting from the defendants’ wrongful acts .at $20,068.
The plaintiffs claim additional damages in consequence, as they allege, of having been wrongfully ejected from the work on the 8th of October, 1870. The United States justify the removal of the claimants from the work, on the ground of its tardy progress, and claim to have acted under the contract itself.
The contract provides if any default shall be made by the claimants “ in the performance of their work, specified in the •contract, of the quality and at the times and places therein provided, that then, in that case, the United States shall have the Tight to take entire and exclusive charge of the work, and complete it in accordance with the conditions prescribed in the ■contract,” &c.
The stipulation in this clause of the contract constitutes a con *510 dition-subsequent, and the defendants’rightunder it to eject the claimants from the work did not attach until the condition was broken. The proof abundantly demonstrates the claimants never broke it, but at all times subsequent to the detention exercised reasonable dilligence under the circumstances in the fulfillment of their part of the agreement.
The ground of complaint was the " tardy progress ” of the work, which the defendants themselves produced, by neglecting to furnish the working-plans and materials as they were bound under the contract. And now to justify the action of the officers of the Government in ejecting the claimants, would be to> justify one breach of the contract by another, which no court can do.
By the contract, as before stated, the* work was to be completed prior to the 1st day of December, 1869, on condition the-stone was delivered at the rate of 2,000 cubic yards per month, and, in case of failure on the part of the defendants to deliver this amount of stone, as soon thereafter as practicable. The stone was not delivered at the rate of 2,000 cubic yards per-month, and although the United States’ default in this respect did not produce long delays in furnishing the material they were-bound to furnish, they did, by their failure to comply with the terms of the contract, technically postpone the time of completing the work beyond the 1st of December, 1869. After the United States’ default, the claimants, by the words of the contract, were bound to complete it as soon after the 1st of December “ as practicable.” To fulfill this part of their obligation, the claimants had the undoubted right to push the work forward as rapidly as practicable, without any hinderance or delay on the part of the defendants. But they were not left free to exercise this right, but hindered and delayed by the-agents of the United' States failing to fulfill their part of the contract, for which we-have awarded damages.
The delay of the Government was so great that only oner abutment and one pier were located on the22d of August, 1869, and the working plans therefor were not furnished until the 4th of September following, and no other plans until long after the time when the whole work was to have been completed. High waters also intervened, in the fall of 1869, and stopped the work for a month, which, by the terms of the contract, con *511 stituted an equitable element to be considered by the Government before claiming the forfeiture of the contract.
In fact the record shows no ground of forfeiture, or reasonable apology for ejecting the claimants from the work. The act .was unauthorized, and constituted another breach of the contract, for which the law awards at least nominal damages. But the evidence fails to show actual damages, and therefore we have allowed none.
On the contrary, the cost of finishing the work would have been, as shown by the proof, equal to the price to be paid for it.
It also appears that the damages which resulted to the claimants by reason of the idleness of their tools, machinery, and vessels, after their ejectment from the work, were no greater than those wSicli were necessarily incident to the termination of the work under the contract.
The other claims for damages under the second, third, fourth, seventh, and eighth items in the petition are not sustained, and therefore disallowed.
The value’of the work, as measured by the contract, which claimants did before their ejectment, is shown to be... $76,314 47
They have received. 54,105 98
Leaving balance. 22,238 49
Damages sustained... 20,06.8 00
42, 306 49
For this sum ($42,306.49) the claimants are entitled to recover, and judgment will be so entered.