# THE WESTERN UNION RAILROAD COMPANY

## *v.*

## FRANKLIN SMITH.

1. SETTLEMENT — *taking payment under protest not a settlement or estoppel.* Where, on an attempt to adjust and settle an account, the defendant allowed the plaintiff such items and sums as he supposed to be right, wholly ignoring the plaintiff's other claims, and paid the plaintiff on the defendant's own views of what was just and proper, which was received under protestation that it was not enough, without giving any release or discharge, it was *held* that this was not a final settlement, and that the acceptance of the money offered could not operate as an estoppel upon the plaintiff, and thus preclude him from suing for and recovering any balance that might be shown to be due him.

2. CONSOLIDATION OF RAILROADS — *effect on prior liabilities.* Where the articles of consolidation of two railway companies provided that the new company should assume the debts and liabilities of the old companies, and should assume and carry out all their unexecuted contracts, and the act of the legislature, ratifying and confirming the consolidation, saved the rights and remedies of creditors, it was *held* that a person performing labor under a contract with one of the old companies might maintain an action against the new company to recover whatever sum was due him under his contract.

3. PAROL EVIDENCE *to explain contract.* Where a party agreed, in writing, with a railway company to lay its track, using the words, "to make up the track in good running order, *well surfaced,* ties evenly and firmly bedded, and 2,600 good ties to be put in per mile, joints to be properly set between ties, fastened with clasp joint, supplied for the purpose, properly fitted, so as to hold an equal portion of each rail, and no greater space to be left between the ends of the rails than is sufficient for expansion," etc.: *Held,* that whether this required the contractor to fill up the space between the ties with earth or other proper substance, was a question of fact depending upon usage in such cases, and that what was meant by the word "surfaced," must be determined from the evidence of witnesses conversant with the subject to which it relates.

4. CONTRACT *to construct bed of railroad between two places, construed.* A contract to construct the road-bed of a railroad, between Fulton and Port Byron, will include all the grading between the termini of the road at the points as indicated by the depot grounds, and will not be satisfied by completing the work to the corporate limits of the places named, and consequently the contractor cannot recover extra compensation for grading within the corporate limits of the last named place.

5. SAME — *construction acted on by the parties.* And in such a case, where the contractor goes on and completes the work within the corporate limits of the town without asking for terms, or even asking for a contract to do the work, that will be evidence that he understood such work to be embraced in his original contract.

6. SAME — *right to abandon without full performance.* Where a party contracts to lay the iron on a certain number of miles of a railroad track, and is bound to complete the same before the ground should freeze, and the company is bound to furnish the iron and materials for that purpose, a failure of the company to furnish the iron necessary to complete the work before the freezing of the ground, will authorize the contractor to abandon the contract, and refuse to proceed further with it.

7. SAME — *if party proceeds after default of the other, he cannot claim extra compensation.* Where a party is prevented from completing his contract in proper season by the neglect of the other party to furnish the necessary materials, so that he might abandon the work if he chose so to do,

if he afterwards, on being furnished with material, proceeds and completes the work without any new contract, it will be presumed that he proceeded under the original contract, and that will furnish the measure of his compensation, and he cannot recover extra pay by showing the work was worth more on account of the state of the weather, or because the ground was frozen.

8. SAME — *right to retain moneys due on work to complete unfinished part.* Where a party employed to do certain work performs part and leaves part uncompleted, the other party will have the right to retain out of his pay, for the work done, a reasonable sum to complete the same.

9. SAME — *whether work done is outside of contract is a question for the jury.* Where a party employed to build a railroad expended labor in encasing the embankments with stone, to protect them from high water and floods, for which he claimed extra compensation, it was *held,* that if this work was done at the request of the company (it not being specified in the original contract), and was not to secure his other work from injury or destruction by high water, he was entitled to recover what the service was reasonably worth, but that this was a question for the jury to find from the evidence.

10. SAME — *right of railroad company to charge contractor for use of train, etc.* If a contractor to grade a railroad bed has the use of an engine, cars, etc., of the company in removing earth and stone that he is required to remove himself under his contract, the company will have the right to retain, out of his estimates, a reasonable amount for the use ; but where such engine and cars are only used in transporting rock from other places to riprap embankments under an agreement to furnish the same, the company cannot retain any thing for such use.

11. SAME — *construed as to the price of stone, whether the price named applies to stone not excavated on line of road.* Where a contract for the grading of a railroad provided that the contractor should have a certain price per cubic yard for stone excavated, and a given price per cubic yard for placing the same on the sides of embankments, it was *held,* that the price named in the contract was not applicable to stone furnished by the contractor, not excavated in the line of the road, but got from other places, and hauled by him with teams, to encase the embankments, and that for such stone so furnished the company was liable to pay what it was reason ably worth.

12. INTEREST — *ten per cent not allowable except on express contract.* The statute of 1857 only allows ten per cent interest on express stipulation to pay that rate, and not on implied contracts to pay interest. On the latter, only six per cent can be allowed. The fact that the parties allowed ten per cent on some balances is not sufficient to prove an express agreement to pay that rate on future balances.

APPEAL from the Circuit Court of Carroll county; the Hon. W. W. HEATON, Judge, presiding.

This was an action of assumpsit, brought by Franklin Smith against the Western Union Railroad Company, to recover a balance claimed to be due, for work and labor under a contract, and for extra work outside of the written agreement. The material facts of the case are stated in the opinion.

Mr. J. M. BAILEY, and Mr. J. I. NEFF, for the appellant.

Mr. WILLIAM BARGE, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that on the 29th day of March, 1865, Randall W. Smith entered into an agreement with the Northern Illinois Railroad Company to grade and construct the earth-work on the line of their road, between Fulton and Port Byron. The contract was in writing, and signed by the parties. From time to time there were changes made in the contract, by the company agreeing to pay him for grubbing, for rock excavation, and trestle-work, at prices specified in the additional agreements. Smith proceeded with the performance of the work, until in October of that year, when, by a mutual agreement of all parties, the contract was transferred to appellee, a brother of R. W. Smith. He was to proceed to the completion of the work, on the same terms as specified in the agreement. They were to pay him the same prices, and in the same manner.

Appellee proceeded with the work, and the company paid him on monthly estimates, making them in his name and payments to him. Subsequently, appellee contracted to lay seventeen miles of track for the company. He commenced in the latter part of October, and continued at the work until he laid all of the iron the company had provided, when he suspended the work. But about the first of January, the company having

procured iron, he proceeded to lay the balance of the track, which amounted to four and one-half miles. This was done when the ground was frozen, and the surface was a portion of the time covered with ice. The contract provided that the track should be laid before the ground should freeze, but that was rendered impracticable, because of the failure of the company to furnish the iron necessary for the purpose. By the contract, the company were to pay him four hundred dollars per mile for laying the track, to furnish an engine and flats properly manned, but he to load and unload materials used in laying the track and surfacing it.

Appellee also used a large quantity of stone in casing embankments, to protect them from being destroyed by the washing of water. About this item there is a total disagreement of the parties as to price, etc. Appellee claims this was work not embraced in his brother's contract, whilst the company contend that it is. He claims that he is entitled to pay for ballasting, or filling the track, between the ties, and for making a fill and grading in the streets of Port Byron. He also claims for services, in taking charge of the hands of the company, for himself and son, in protecting the road against high water for half a month, in May, 1866, and he claims interest on these various sums, at the rate of ten per cent. The company charged him with the use of an engine, $1,320, which they deducted from his estimates and retained, which he insists is wrong, as he had paid $1,000 in full for the use of the engine. The jury found a verdict in his favor for $9,538.08, being the items which he claimed, and ten per cent interest per annum. The court below rendered a judgment on the verdict, and the company appeal to this court.

It appears that on the 17th day of January, 1866, The Northern Illinois Railroad Co. and The Western Union Railroad Co. consolidated and formed a new company, under the name of The Western Union Railroad Co. Hence, it will be observed that a portion of the work for which appellee claims was per-

formed before, and a portion after the consolidation. But it was agreed by the articles of consolidation that the new company should assume the debts and liabilities of the old companies, and should carry out and perform all of the unexecuted contracts. And the act of the general assembly, ratifying and confirming the consolidation, saves the rights and remedies of creditors, etc. Nor is there any question made, nor do we see how any can be, as to the right of appellee to sue and recover, if he has a meritorious claim.

It is urged, with great apparent earnestness, that when the last discussion of their accounts occurred between appellee and Thompson, the president of the road, and appellee received a part of his claim, it should be held and treated as a final settlement. There is no rule of law declaring that such acts amount to, or operate as, an estoppel. What the parties did and intended at that interview, like any other fact, must be ascertained from the testimony of witnesses, in connection with the accompanying circumstances. And from the testimony of both Thompson and appellee, we fail to learn that either party understood it as a final settlement. The president seems to have allowed what he supposed to be right, and to wholly ignore appellee's claim, and paid him on his own views of what was just and proper. But there can be no pretense that appellee assented to the arrangement, but, on the contrary, he, Thompson, and young Smith, all say that he protested against the disallowance of his claim. We think there is not the slightest pretense that he ever assented to, or was satisfied with, what was then done, or that he ever intended to relinquish his claim. He took the money that was offered him, but signed no release, acquittance or discharge of the company.

Whether it is necessary, and a part of the undertaking of the person contracting to lay the track of a railroad, to fill up between the ties with earth, or other proper substance, is a question of fact. It must depend upon the usage in such cases. We know that many things are indispensable to complete the road. It

must be graded, bridged, furnished with culverts, embankments and fills. It must be tied, and the iron laid and secured, and then it must, to be a finished and complete road, be filled and leveled between the ties with broken stone, earth or gravel. Appellee agreed " to make up the track in good running order, well surfaced, ties evenly and firmly bedded, and 2,600 good ties to be put in per mile, joints to be properly set between ties, fastened with clasp joint, supplied for the purpose, properly fitted and driven on so as to hold an equal portion of each rail, and no greater space to be left between the ends of the rails than sufficient for expansion," etc.

The difficulty seems to arise as to what is embraced in the term " surfaced." Does it mean that the road-bed shall be properly leveled and adjusted to receive the ties so as to render their surface even and level ? Or does it embrace that, and the filling of the space under and between the ties ?

The witnesses called by the different parties seem to disagree as to which meaning is embraced in the term. It seems to us that the meaning of the word, as used in this connection, is indefinite, and may be variously applied. Appellee and his witnesses understand it to only require that the surface of the ties shall be brought to a level, horizontal line, both lengthwise and laterally. On the other hand, the witnesses say that it is to fill the spaces between the ties. The term in this case is, no doubt, employed in the sense applied by those engaged in the construction of such roads. We cannot determine from the evidence that it only embraced what is claimed by appellee. It may, however, be shown on another trial. There was some evidence tending to show that the engineer directed him to fill in the earth, and he should be paid, but this is flatly denied by the engineer, and it is for the jury to say on which side was the preponderance.

It is claimed that the contract to construct the road-bed between Fulton and Port Byron did not embrace the grading in the streets, and through the latter place ; and that as the work

was done outside of the contract with R. W. Smith, appellee may recover the value of the labor, and at the season it was done, it was worth much more than the price fixed by the agreement for grading outside of the town; and the jury allowed him in their verdict the difference in the rates, according to the proof. We are inclined to hold that the parties entering into the agreement understood that it embraced all of the grading between the termini at the points which are indicated by the depots, or depot grounds. No reason has been suggested why the company should have refused to contract for the grading in the corporate limits of the town, and not only so, but appellee seems to have so understood the contract, as he went on and completed the work without asking for terms, or even asking for a contract for the job. Had he supposed it was not embraced in his contract, he, as a fair business man, would at least have obtained permission to do the work, and would naturally have been anxious to know whether he was to get the same, or higher prices, for his labor. The contract will bear the construction, and the parties seem to have so construed it, that it was embraced in the contract of appellee's brother, which he had agreed to, and was carrying out.

It is urged that the evidence fails to sustain the finding for $900 for laying the last four and a half miles of track in the winter. The evidence shows that it was worth fifty per cent more to lay the track on the frozen ground than when it was not frozen. But the question is raised, and the finding depends upon its solution, whether the work was done under the agreement or outside of it. When the company failed to furnish the iron necessary to complete his work within the time limited, appellee had the right to abandon the contract, and to refuse to proceed further with it. The company had bound themselves to furnish the iron, and bound appellee to lay all the track before the ground should freeze in the ensuing winter, but they failed on their part, and the contract was then at an end, if appellee saw proper to so treat it. And whether he did or not

is a question of fact to be proved, and found by a jury. If appellee simply resumed track laying as soon as the company obtained iron, without any further arrangement or understanding, the reasonable presumption would be that he was intending to perform the labor under the agreement.

That it was worth more seems to have been conceded, inasmuch as the engineer and president of the road both say that they applied the difference to make up the lack of completing the track by filling in between the ties.

They claim that they were put to large expense in completing the track, and they were willing to let one offset the other; not that they considered that they were liable, but were willing to treat him generously, and were willing to so apply it.

If appellee's contract required him to fill in and level up the track, the company had the right to retain what was a reasonable compensation for performing the work. But that was for the jury to find, under the evidence.

Whether appellee was entitled to recover for his services, and of his son, and if so, how much, depended upon the evidence. If the services were performed at the request of the agents of the company, and not to secure appellee's work from injury or destruction by the high water, he should recover for their services what they were reasonably worth. But this, of course, must depend on the evidence, and is for the finding of the jury.

Appellee insists that the company wrongfully retained $1,-320 for the use of an engine and train, with the fireman, engine-driver, conductor, and brakeman. The company claims that he had the use of the train and men in moving earth and stone which appellee, by his contract, was bound to remove at his own expense. On the other hand, appellee admits that he had such service to the value of $1,000, and that he had paid it to the company. And the vouchers show that he was charged that sum, and it was deducted from his payments on estimates; and he insists that the company have charged him for

these services, when the engine and train were, under agreement, to be furnished without charge; that they so furnished the train to haul stone for riprapping the embankments; and also, when they were engaged in securing the road against high water. If the company have charged him for such service when they were to furnish it without charge, and they have retained and refused to pay him what was due on his estimates, then he has a right to recover to that extent. But if, on the contrary, they furnished him the engine and cars as a means of removing earth, that he was to do under his contract, the company have a right to retain a reasonable amount out of his estimates.

It is urged that appellee had no right to recover interest, even if he had a right to recover for the principal of the various amounts claimed. The second section of the act of 1857, page 45, authorizes parties to contract in writing, or verbally, for any rate of interest not exceeding ten per cent per annum. But the statute provides that it must be done by stipulation or agreement, and a fair and reasonable construction of the language of the section seems to require that the agreement must be express, and not implied. Both of the terms imply an actual contract, understood and not implied, and when the statute has required that there shall be a stipulation or agreement, we are unable to say, in the absence of such an agreement to pay interest, that the law will infer such a contract or liability. In this case, it was no doubt the custom of the parties to charge and allow to each other interest on balances, but we think that the evidence is not sufficient to prove any express promise. Appellee in his testimony does say it was the agreement, but he limits this statement, so as to only mean that there was an implied agreement on balances, after the consolidation; that his express agreement was with Thompson before the consolidation, and when appellee held the obligations of the road for $8,000. He says there was no agreement to pay interest on these claims. We are therefore of the opinion, that, as the evidence stands in this record, the

64—75TH ILL.

jury were not warranted in finding and allowing interest, even if their finding of any portion of the claim was correct.

Appellee claims that the company only allowed and paid him on estimates for 2578 cubic yards of rock, one dollar per yard, when it should have been two dollars. It appears that the greater part of this stone was used for riprapping the embankments of the road; that it was obtained on the line of the road from a quarry adjacent thereto, from a fallen stone building, and loose stones picked up on the surface of the ground near the road. Appellants claim that the price was fixed by the agreement with R. W. Smith, and that they allowed him that price. That contract stipulates, for excavation of loose rock, one dollar, for ordinary solid rock, one dollar and a half, and for extra solid rock, from one and a half to two dollars. This rock seems to have been principally what is denominated loose rock. It required no blasting, but was raised with picks and bars in the street and quarry, and then broken with ordinary stone hammers.

But we are left in doubt by the evidence, as to what portion of the stone that had to be removed by appellee in excavating the road-bed, was used for riprapping. If it was so used, it would seem that, inasmuch as appellee was compelled to remove it from the road, when it was agreed to pay him forty-five cents a yard for putting it in place on the slope of the embankments, and as the company furnished the engine and train, with men to control it, it could never have been contemplated that appellee should, for the stone excavated in the track of the road, have more than a dollar for excavating it, and forty-five cents for placing it on the sides of the embankment. The labor required to remove it from the track, would certainly be equal to, if not greater than, placing it on the cars, and the forty-five cents a yard would no doubt be ample compensation for unloading and placing it on the slope of the embankments.

But there can be no pretense that the price of the stone obtained at the other places was governed by the written agree-

ment. It did not provide that appellee should furnish stone, but only that he should excavate stone on the track of the road; and, having obtained stone from other places, and hauled with teams, and this all being outside of the written contract, it seems to be obvious, that for such stone, the company should pay what it is reasonably worth; and on another trial, the parties will be able, no doubt, to show what portion of the stone thus used was excavated in the track of the road, and what portion obtained from other sources. The evidence did not warrant the finding of one dollar on each yard of stone, in addition to the one dollar each that had been paid, even if it did for any portion of the amount. For the errors indicated, the judgment of the court below must be reversed, and the cause remanded.

*Judgment reversed.*