The Louisville and Nashville Railroad Company *v.* Hollerbach *et al.*

Judgment affirmed.

Filed Jan. 26, 1886.

---

No. 11,595.

THE LOUISVILLE AND NASHVILLE RAILROAD COMPANY
*v.* HOLLERBACH ET AL.

CONTRACT.—*Delay in Performance.*—*Damages.*—Where a contractor in good faith enters upon the performance of a contract, and incurs expense, the employer having notice of that fact, if such employer, either by an order or by negligently failing to perform an essential part to be performed by him, suspends the execution of the contract, upon a resumption and completion of the work under the contract, it will be implied that all loss necessarily occasioned by such suspension, of which the employer is at the time notified, shall fall upon him.

SAME.—*Breach of.*—*Measure of Damages.*—Where, on account of a failure by the employer to perform preliminary work, which, under the contract, he is required to perform, before the contractor can proceed with the work he is to perform under the contract, the latter is unable to proceed, and the work is suspended, to the injury of the contractor, without his consent, of which the employer has notice, such contractor, although he may have afterwards completed the work under the contract, may, in addition to the contract price, recover all his actual damage occasioned by such delay, including injury to tools, and interest at six per cent. for the period of the delay on all moneys invested in materials which he

was bound to and did furnish, and in the labor necessary in furnishing the same.

SAME.—*Instruction.*—In an action to recover the contract price for work performed under a special contract, and damages for a breach of the provisions of the contract by the employer, whereby the work was delayed, etc., where it appears that on account of the failure of the employer to do certain preliminary work necessary to be done by him, before the contractor could begin to perform his part of the contract, the latter was not able to so commence his work until after the time fixed in the contract for the completion of the work, an instruction, asked by the defendant, to the effect that if at such time the employer had not performed such preliminary work, and the contractor was not ready with materials to commence the performance of his part of the contract, the latter was under no obligation to hold himself in readiness to do the work, and that unless the jury believed that a new agreement was afterwards made the plaintiff could not recover, was correctly refused.

PLEADING.— *Uncertainty of Complaint.—Evidence.— Variance.*—Where the allegations of a complaint are too general and uncertain, and the defendant has made no motion to have them made more specific, he can not complain of a variance, if such allegations are made more certain by proof on the trial.

SAME.— *Variance.*—It is only where the evidence shows a state of facts different from that averred in the complaint that a fatal variance may be claimed.

From the Vanderburgh Circuit Court.

*S. B. Vance,* for appellant.

*C. A. De Bruler, C. Denby, D. B. Kumler* and *A. Gilchrist,* for appellees.

MITCHELL, J.—On the 25th day of July, 1881, a written contract was made between the Louisville and Nashville Railroad Company and Archibald Hollerbach for the construction by the latter of two stone T (tee) abutments at Pigeon creek, on the St. Louis division of the Louisville and Nashville Railroad in the city of Evansville. The material provisions of the contract are as follows:

1. That Hollerbach should furnish all the material except cement and sand, and build the abutments according to plans and specifications furnished by the company, the specifications to form part of the contract.

2. That the stone should be obtained from the Cannelton quarries in this State, and be taken from the quarries to the bridge site at the expense of Hollerbach; but if the water in Pigeon creek should become too low for the use of barges, the company should furnish cars to transport the stone from the river to the bridge site, but that he should load it on the cars and unload it at the bridge site promptly.

3. That the company should furnish the foundations and the cement and sand, and that the job should be completed by the 20th day of November, 1881.

4. The company was to pay him nine and $\frac{20}{100}$ dollars for each cubic yard of stone laid in the abutments off of barges at the bridge site, and nine and $\frac{95}{100}$ dollars for each cubic yard of stone laid in the abutments off of cars at the bridge site.

5. The payments were to be made as follows : " Estimates of masonry laid will be made at the end of each month, and from the estimate twenty per cent. will be retained until the whole job is completed, when a final estimate will be made at the above specified rates, and all previous estimates deducted therefrom."

Pending this contract, the benefit of it was assigned by Hollerbach to Simeon Jaseph.

The abutments were completed in the spring of 1883, and this suit was brought by Hollerbach to recover of the defendant a balance alleged to be due for the work, as by the contract, and also to recover damages for certain breaches of the contract therein alleged. Jaseph was made a defendant because of the assignment, which is alleged to have been only as collateral security for certain advances claimed at the date of the suit to have been repaid him.

The complaint was in two paragraphs. After alleging the execution of the contract, the substantial grounds of complaint in the first paragraph are as follows:

1. That under the contract the plaintiff proceeded to construct the piers and finally constructed them to the approval

of the superintendent of bridges of the defendant, putting into the piers, from stone unloaded from cars, sixteen hundred and ninety-one cubic yards, of the value, according to the contract price, of sixteen thousand eight hundred and twenty-nine $\frac{45}{100}$ dollars; that the plaintiff, at the special instance and request of defendant, put into the piers work, material and labor to the amount of one hundred and forty dollars, which was extra and in no way contemplated by the terms of the written contract.

2. That, according to the terms of the contract, the defendant was to prepare the foundations of the work ready to receive the masonry to be furnished and constructed by the plaintiff, by the 25th day of July, 1881; but that, although the plaintiff was ready with his tools, machinery, hands, material, barges and other things necessary for the construction of the piers at the time fixed in the contract, yet the defendant wholly neglected and refused to prepare the foundations as it had agreed to do, until the lapse of fifteen months after the time it had fixed; that by reason of the failure of the defendant to perform its part of the contract in the preparation of the foundations, the plaintiff was greatly injured and damaged in this:

1. That he was compelled to pay out and expend, and did pay out and expend in extra handling of stone, made necessary by the delay in the preparation of the foundations, the sum of twenty-four hundred dollars; that by reason of the delay he was compelled to unload his material from the barges on to the river bank, and then reload on to the barges and reload on the railroad cars, to his great damage.

2. That he was further greatly injured and damaged by the delay of the defendant, in this: loss of time of plaintiff, and of non-use of ropes, blocks, derricks and other tools and machinery, loss and destruction of material, and wear and tear and injury to ropes, blocks, derricks and other tools and machinery, by reason of exposure and the delay in the use of material which he had furnished and paid for, being

interest on fifty-five hundred dollars for fifteen months, in all, the sum of twenty-five hundred dollars.

3. That by the terms of the contract the defendant agreed to furnish to the plaintiff all the cars necessary for the fast completion of the work, upon application of plaintiff, so that plaintiff should not be hindered in the work for want of cars; that after the foundations were completed and the plaintiff began the construction of the piers, he repeatedly made application to the defendant for cars for the transportation of stone to the bridge site, and defendant failed, neglected and refused to furnish plaintiff cars, by which he was greatly delayed in the work, that is to say, for one hundred days, to his damage fifteen hundred dollars.

It is averred that the defendant paid to the plaintiff the sum of eleven thousand dollars " or thereabouts," and that there is still due him on the contract, and for damages, the further sum of eleven thousand dollars, which the company refuses to pay.

The second paragraph contains the following additional grounds of complaint:

1. That the defendant was, by the terms of the contract, to furnish the foundations for the abutments according to the plans and specifications submitted at the time of making the contract, which were part of the contract; that defendant failed to construct the foundations according to the plans and specifications, in this: that the stems of the abutments were shortened two feet after the stone therefor had been delivered, at a cost of seven dollars per cubic yard, and that the shortening of the stems necessitated a great waste of stone which had been prepared and delivered, and which had to be chipped off, in all, ninety cubic yards, of the value of eight hundred dollars, and to the damage of this plaintiff eight hundred dollars.

2. That by the terms of the contract and changes made in the construction of the abutments, they were finally completed of a height of eighteen inches less than required by

the plans and specifications, by which the plaintiff was damaged in preparing and delivering thirty-three cubic yards of stone of the value of two hundred and fifty dollars, to his damage two hundred and fifty dollars.

The defendant moved the court for an order requiring the plaintiff to separate so much of his complaint as sought to recover for work done, in pursuance of the contract, into one action, and so much thereof as counted upon damages for the defendant's default, into a separate action.

This motion was overruled, and the ruling excepted to, but no question is made upon this ruling here. Pending the suit an order was made, by agreement of parties, to the effect that the railroad company should pay to Simeon Jaseph the sum of three thousand and thirty-seven dollars and ten cents, whose receipt therefor, according to the order, should be an acquittance to the company for that amount, both as against Jaseph and Hollerbach, and that such payment should be without prejudice to Hollerbach for any sum which he claimed in excess of that amount from the railroad company.

The defendant answered in five paragraphs, but as it is not material to any question to be considered, the answer is not further noticed. It took issue with all the material averments in the complaint.

The cause having been submitted for trial to a jury, a verdict in favor of plaintiff for three thousand three hundred and ninety-seven dollars and thirty-three cents was returned.

The overruling of the motion for a new trial is the only error assigned here.

This assignment brings in question the ruling of the *nisi prius* court in admitting certain evidence, in giving, refusing and modifying certain instructions, and the sufficiency of the evidence to sustain the verdict.

The case, as presented, is to a degree unusual in its character, and we have had some difficulty in determining the principles which should be applied to it, owing to the form in which the action is brought.

It will be observed that in both paragraphs the making of the contract is averred, and that "under said contract" the plaintiff proceeded to construct the abutments to the approval of the defendant's engineer.

The *gravamen* of the action is to recover on the executed contract the stipulated price of the work specified therein, and for extra work not embraced in the contract, in addition to which damages are claimed for certain specified breaches of the contract.

The appellant insists that the plaintiff's right of recovery, he having completed the work, as it is alleged in his complaint, under the contract, is limited to the contract price, and that because he proceeded under the contract to the completion of the work, he can recover no damages which may have resulted from the delay occasioned by the default of the railroad company. In support of this contention *Bush* v. *Chapman*, 2 Greene, Iowa, 549, and *Western Union R. R. Co.* v. v. *Smith*, 75 Ill. 496, are relied on.

The case first cited was an action on a special contract, by which it was agreed that Chapman should do the millwright work in the construction of a flouring-mill for Bush. The latter was to furnish all the material, and Chapman was to do all the work, and have the mill ready for grinding by the first day of the ensuing October, in consideration of which he was to be paid a certain price in stipulated payments. It was averred that the plaintiff was ready and willing to perform the work according to the agreement; that the defendant failed to furnish materials, so as to enable him to complete the work at the time agreed upon, but that the plaintiff nevertheless did complete it by the first day of February, of the year following. The declaration proceeds to specify the manner of the failure, and the injury sustained thereby, and claimed damages. The court said: "By asserting the binding effect of the special contract, claiming the benefit of it, and making it the *gravamen* of his action, he" (plaintiff) "is precluded from the recovery of any damages for delay," etc.

The case is decided upon the authority of *Shaw* v. *The Turnpike*, 3 Pa. 445. This last case proceeds upon the theory that a party to a special contract may not silently treat it as subsisting until the work contracted for is completed, and then attempt to recover upon a *quantum meruit*. The case of *Western Union R. R. Co.* v. *Smith, supra*, was an action by a contractor for the building of a section of railway to recover damages on account of the failure of the railroad company to furnish material seasonably, so that the completion of the work contracted for was extended into the winter season, and the work was thereby rendered more difficult and expensive. In the course of the opinion in that case it was said: "When the company failed to furnish the iron necessary to complete the work within the time limited, appellee had the right to abandon the contract and refuse to proceed further. * * * If appellee simply resumed track laying as soon as the company obtained iron, without any further arrangement or understanding, the reasonable presumption would be that he was intending to perform the labor under the agreement." It was held that the contract provided the measure of compensation, and that extra compensation could not be recovered because the execution of the work was rendered more expensive by the delay of the employer. It may be doubted, however, whether the authority of the case last cited is not impaired by the later case of *Tobey* v. *Price*, 75 Ill. 645.

Yielding our assent to the cases cited so far as they hold that a contractor, who proceeds without explicit notice or a new agreement, to the completion of work specially contracted for, will be presumed to have done so under the special contract, we are nevertheless of opinion that where the execution of such contract is dependent upon something essential, which is to be performed by the employer, the default of the employer, resulting in damages to the contractor, may render the former liable for such damages, notwithstanding the latter has not abandoned the contract. While it is true, the contract is to be regarded as furnishing the exclu-

sive measure of compensation for the work done, the actual damages which have certainly resulted from the default of the employer, should not fall on the contractor. If it were otherwise, a contractor might invest the whole of his available means in necessary initial preparations to perform his contract, and then by the fault of the employer be compelled to accept the alternative of abandoning the contract or waiving any claim for damages.

There is no rule of law which requires the infliction of such injustice. Where a contractor in good faith enters upon the performance of a contract, and incurs expense, the employer having notice of that fact, if the employer, either by an order or by negligently failing to perform an essential part to be performed by him, suspends the execution of the contract, upon a resumption and completion of the work it will be implied that all loss, necessarily occasioned by such suspension, of which the employer is at the time notified, shall fall upon him. The contractor may not acquiesce in the suspension in silence, and upon the resumption and completion of the work claim the contract price, and damages for that which may have occurred with his acquiescence. If, however, notice be given of his readiness and willingness to prosecute the work to completion within the time agreed upon, and that its suspension will involve him in loss, we can discover no principle upon which it can be held that the loss must fall upon the contractor in case of a voluntary resumption of the contract. That it does not is maintained by the following authorities: *Tobey* v. *Price,* 75 Ill. 645; *Figh* v. *United States,* 8 Ct. Cl. 319; *Harvey* v. *United States,* 8 Ct. Cl. 501; *United States* v. *Behan,* 110 U. S. 338; *United States* v. *Speed,* 8 Wall. 77; *Koon* v. *Greenman,* 7 Wend. 121; *Merrill* v. *Ithaca, etc., R. R. Co.,* 16 Wend. 586; *Railroad Co.* v. *Howard,* 13 Howard, 307, 344.

The case of *Harvey* v. *United States, supra,* arose out of a claim filed against the government for the suspension of work on a contract for the erection of bridge piers for the Rock

Island bridge. Under the contract it became the duty of the government to determine the location of the bridge and adopt a general plan for its erection. The work was suspended by reason of the failure of the officer entrusted with its supervision to determine the location and furnish plans. It was held that this furnished no excuse for delaying the contractors in the prosecution of the work they had undertaken. It was there declared that the rule of damages was the same, *pro tanto*, as in cases where the defendants wrongfully put an end to the fulfilment of the contract, viz., the direct and actual loss which the contractor sustained.

With this statement of general principles, we may now consider the case before us.

The contract embraced the construction of work of such magnitude, within a time so limited, as that it became the duty of the plaintiff to employ such means as would reasonably accomplish the work within the time limited. It may have been that to a considerable extent energetic action and vigorous prosecution of the work were depended upon largely to secure profits from the contract. That the work might not be retarded the defendant owed the reciprocal duty of preparing the foundations upon which the abutments were to rest, with due diligence.

The evidence tends to show that the plaintiff, within a few days after the execution of the special contract, took the initiatory steps to execute the work. He proceeded with a force of about forty stonecutters, quarrymen, etc., to quarry and shape the stone to suit the specifications as furnished him. He procured and put in place soon after, the necessary derricks, ropes, guys and other appliances necessary for the construction of the piers.

The evidence tends to show that by corresponding diligence the defendant might have prepared the foundations within a period of twenty or thirty days from the date of the contract. Neglecting its opportunity, an oncoming freshet delayed the foundation for a twelve month or more.

Having, as the evidence tended to show, expended from six thousand to eight thousand dollars in preparing material, ready to be laid in the piers, the plaintiff, on the 26th day of November, 1881, six days after the time limited for the completion of the contract, gave the defendant's superintendent substantially the following written notice:

"SIR: The time fixed upon in my contract with the Louisville and Nashville Railroad Company, for the erection of two T abutments on Pigeon creek, in the city of Evansville, has now expired, and the abutments are not completed. My failure to complete them in time is caused by the railroad company failing to perform its part of the contract, in this, failing to prepare the foundations in time to allow the completion of the masonry, neither of the foundations being yet ready. I have now quarried and cut at the quarries, near Cannelton, and have had for forty days past, some twenty-two hundred yards of stone, prepared especially for the abutments. I also have had for some time piled under derrick at bridge site, a sufficient amount of stone to have commenced work, but have been compelled to delay for the reason given. As the material is out and ready, and derricks are up at bridge site, block and tackle being damaged by being out in the weather, I ask for an estimate of six thousand dollars on material, so as to enable me to pay indebtedness incurred in procuring material. I also ask a modification of the contract, so as to give me additional estimates on material at bridge site from time to time, sufficient, with amount asked above, to make seventy-five per cent. value of material placed there."

To this the defendant by its superintendent responded, in substance, that the company could not possibly allow estimates on material not in its possession, saying further, that if plaintiff would deliver stone at bridge site, the company would advance money on it.

Thus encouraged, the plaintiff, at great additional expense, procured a large quantity of stone to be freighted from Can-

nelton, a distance of some eighty miles. The evidence tended to show that he then had invested in stone, freightage, etc., between nine and ten thousand dollars. Some time in January he was allowed an estimate of twenty-eight hundred dollars. The company declined to make any further advances, except as the stone was laid and measured in the piers according to contract.

The foundations were not ready until the 20th of September, 1882. On that day work was resumed.

The plaintiff was permitted, over the defendant's objection, to show the cost of transporting the stone from the quarries to the bridge site, and in this state of the case, the court instructed the jury, in substance, that if they found from the evidence that the plaintiff, in good faith, proceeded after the execution of the contract, to get out stone, and to perform his part of the contract, and was ready and able to have constructed the piers according to the contract, if the foundations had been prepared in time, and that the foundations were not prepared until after the 20th of November, 1881, then the plaintiff was entitled to recover as damages, interest at the rate of six per cent. on the amount actually invested by him in getting out stone and preparing to perform the contract, for such time as he was delayed by the failure of the defendant. The admission of the evidence and the giving this instruction are complained of.

Within the principles already stated, the defendant had no reason to complain of the rulings of the court in respect of either the evidence or the instruction. The defendant having been notified of the exact situation in which the plaintiff was placed, the loss on his investment having been occasioned, as the instruction assumes, by the default of the defendant, it could not reasonably require him to carry the material and expense of preparing it without compensation.

We have found no case in all its features identical with this; nor do we know of any formulated rule applicable for the measurement of damages in an analogous case. The law aims

The Louisville and Nashville Railroad Company *v.* Hollerbach *et al.*

to compensate for actual loss.    We can not think that the allowance of six per cent. interest on the money actually invested during the time the work was suspended by the defendant, is an unreasonable compensation.

Whether the amount allowed by the jury as interest was correct or not depends upon the computation made by them. As there is nothing in the record indicating the amount thus allowed, and nothing from which we can say the computation was wrong, we must assume that whatever sum was allowed as interest was correct.

The court admitted evidence tending to show that after the stone had been prepared with which to construct the piers according to the specifications originally adopted, the plan was changed by the defendant, and that the change involved expense to the contractor in re-shaping some of the stone according to the new specifications.

This was objected to, and it is now claimed that the proof showing the cost of re-cutting stone rendered necessary by the change is a variance from the claim made in the second paragraph of the complaint.

This evidence was admissible.    It is averred that by reason of the shortening of the stems of the abutments, after the stone had been prepared, the stone had to be " chipped off," to the plaintiff's damage.    This averment was sufficiently definite to admit the evidence in respect of re-cutting the stone.

By the third instruction the jury were told, in substance, that if changes in one of the piers became necessary by reason of a mistake of the defendant's engineer, the cost of making such change, if it was made by the plaintiff, might be recovered by him.    It is contended that this instruction was outside of the case as made by the complaint.    This is not maintained by the record.    It is averred in the second paragraph of the complaint, that by reason of " changes made in the construction of said abutments, the same was finally completed of a height eighteen inches less than required by the

plans and specifications," involving an additional expense to the plaintiff.

This averment is uncertain. It does not appear whether the changes were made by mistake, or, if by mistake, whether it was the fault of the plaintiff or defendant. On motion it doubtless would have been required that the plaintiff should make it certain. No motion was made. The defendant can not now complain if the plaintiff made it certain by proof. It can not be said to be a variance such as could have misled the defendant. It is only where the evidence shows a state of facts different from that averred in the complaint that a fatal variance may be claimed. *City of Huntington* v. *Mendenhall*, 73 Ind. 460.

Evidence was admitted tending to show damages to the plaintiff's derricks, ropes, guys, etc. There was also evidence tending to show that after the plaintiff resumed work, he was delayed to his injury by the failure of the defendant to furnish cars as the contract required, in order to transport stone. It appeared that the plaintiff gave notice that his workmen were being delayed on account of the failure to furnish cars, and that he made repeated requests of the defendant for cars. Under such circumstances the damages resulting were a proper subject for the consideration of the jury.

As has been suggested by counsel, the evidence in the record is voluminous, and it might be difficult for us to determine after the most careful study of it, whether it warranted the jury in reaching the amount of damages assessed. Whether the amount of damages assessed upon the whole case was correct or not, depends upon the weight of the evidence. As there was evidence properly admitted which, if believed, sustains the assessment returned, we can not disturb the finding.

Finally, it is claimed that error intervened by the refusal of the court to instruct, upon the defendant's request, that if the railroad company did not have the foundations for the abutments completed by the 20th day of November, 1881,

and the plaintiff did not have the stone at the site of the abutments at that time, he was under no obligation to hold himself in readiness to do the work, and that unless the jury believed that a new agreement between the parties was afterwards made, the plaintiff was not entitled to recover damages for the delay occasioned by the failure of the defendant to construct the foundations for the abutments.

Within the principles already referred to, this instruction was not a correct statement of the law, and it was not error to refuse it.

In a case like this, where work has been done under a special contract, the contract price furnishes the measure of compensation for the work. The plaintiff may also recover as damages any direct loss which he sustained by the unreasonable suspension or delay of the work by the employer. The employer must have had notice that the suspension would result in loss, and the suspension must not have been consented to by the contractor. *Doolittle* v. *McCullough,* 12 Ohio St. 360.

These principles seem to have been applied to the case by the *nisi prius* court.

The judgment is affirmed, with costs.

Filed Feb. 18, 1886; petition for a rehearing overruled April 22, 1886.