INDIANAPOLIS TRACTION & TERMINAL CO. v. LAWSON.

(Circuit Court of Appeals, Seventh Circuit. February 6, 1906.)

No. 1,217.

1. CARRIERS—LIABILITY FOR INJURY OF FREE PASSENGER.

A passenger on an electric car, although carried free, is still a passenger, and the carrier owes him the duty of exercising such skill as is consistent with the situation and the service undertaken and the greatest possible care for his safety, and any negligence by which the passenger is injured is actionable.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 974, 975.]

2. SAME—ACTION FOR INJURY TO PASSENGER—INSTRUCTIONS.

Defendant, an electric street railroad company, offered the free use of three of its cars to take members of a women's convention for a ride about the city. The offer was accepted, the plaintiff's ward became one of the passengers, and was injured in a collision. The cars were operated by the regular employés of defendant. Held, that in an action to recover for the injury an instruction that defendant was liable for want of ordinary care, and that the burden of proof to show negligence rested on the plaintiff, was at least sufficiently favorable to defendant.

3. APPEAL—REVIEW—HARMLESS ERROR—PLEADING—VARIANCE.

Under Burns' Ann. St. Ind. 1901, § 394, which provides that no variance between the complaint and evidence shall be deemed material unless defendant was actually misled to his prejudice, and which also requires the defendant to call attention to the fact, and authorizes the court to order the pleadings amended to conform to the proof, where no objection on the ground of a variance was made during a trial, the action of a court in construing the complaint in its charge as covering the case made by the proof, even if such construction was erroneous, did not constitute error prejudicial to the defendant, since the court had power to order the complaint amended.

In Error to the Circuit Court of the United States for the District of Indiana.

Action at law to recover damages for personal injury to the ward, Ada M. Lawson.

It appears that on May 14, 1903, the order of Royal Neighbors, an auxiliary to the Modern Woodmen, and composed of women, was holding a national convention in the city of Indianapolis, the ward of the defendant in error being in attendance. Some time prior to the convention a committee of the society solicited a donation from the plaintiff in error. The committee was informed that the company could not make a donation, but would arrange for three of its street cars to be placed at the disposal of the committee for the entertainment of their guests by trolley ride. The committee thereupon

caused an invitation to be issued to the assembled delegates, and a large number of the delegates availed themselves of the invitation, and boarded the cars for the purpose of an excursion through the principal parts of the city. During the progress of the ride a collision occurred between two of the cars in which Mrs. Lawson was injured. It further appears that the three cars were in charge of the regular conductors and motormen employed by the company, and the jury found that the company, and not the delegates being carried on the cars, was in control of these conductors and motormen. Defendant in error recovered a verdict for $8,000, upon which judgment was entered June 17, 1905, and to review such judgment this writ of error is brought.

At the beginning of the argument defendant in error by petition suggested the death of his ward, Mrs. Lawson, after judgment and writ of error, and that he had been duly appointed administrator of her estate; and asked to be substituted in his capacity as such administrator for himself in his capacity as guardian. His motion was granted by the court.

Wm. H. Latta, for plaintiff in error.

Percy D. Godfrey, for defendant in error.

Before GROSSCUP and KOHLSAAT, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge (after stating the facts as above). The court submitted to the jury the question whether the company or the excursionists were in control of the cars which collided, by whom they were run and operated, and who had control of the conductors and motormen. The jury was also instructed as a matter of law that the company, having done something it was not obliged to do as a common carrier of passengers, and having made a particular arrangement, as to the carriage, thereby came into the relation of a private carrier to Mrs. Lawson as a passenger, if the jury should find that the company was in control of the cars and conductors and motormen; that the company was required to use that degree of care that men of ordinary prudence use under like circumstances, and was liable for a failure therein; and that the burden of proof, on all the issues, was upon defendant in error, and not upon the company. The question of proximate cause was also fully submitted.

A large number of errors were assigned, two of which were pressed on the argument, to the effect that as the company was not a common carrier as to Mrs. Lawson, but only a private carrier, and as the service was gratuitously undertaken, it was liable only for gross negligence. Also that the complaint having counted on the relation of common carrier and passenger, defendant in error could not recover, on the theory that the company was a private carrier, liable only for ordinary neglect, instead of a common carrier, chargeable with the highest degree of care; and that there was a fatal variance between pleading and proof. It is insisted on the part of the company that the parties never came into any legal relation. It is said a donation was requested, and a street car ride offered and accepted; a pure gratuity, without consideration of any kind. This, it is said, removes the case from that large class into which considerations of public policy enter, since by their conduct the parties have voluntarily separated themselves from the great class of carriers and passengers for hire, and no considerations of public policy in any way affect the con-

tract made, or the legal effect of the acts of the parties; that in all private affairs no one is bound beyond voluntary obligations expressed or implied by the contract; and the only thing the company agreed to do was to deliver the cars to the delegates, and surrender to them their control. Having done this it fully complied with every obligation assumed by it, and beyond this it cannot be held.

The position taken by counsel for plaintiff in error is seriously impaired by the finding of the jury that the company actually did run and operate the cars, through its servants, and that the delegates did not control those servants, nor manage the cars. Such position is further opposed by the consideration that even in a private, gratuitous mandate, or bailment of services, the bailor is obliged to use such skill as he possesses, and which is consistent with the situation, the service undertaken, and his profession, business, habits, and position; and that a failure to bestow this degree of care will constitute actionable negligence. Shiells v. Blackburne, 1 H. Bl. 158; Conner v. Winton, 8 Ind. 315, 65 Am. Dec. 761; Wilson v. Brett, 11 M. & W. 113; Mariner v. Smith, 5 Heisk (Tenn.) 208; Preston v. Prather, 137 U. S. 609, 11 Sup. Ct. 162, 34 L. Ed. 788; Gray v. Merriam, 148 Ill. 179, 35 N. E. 813, 32 L. R. A. 773, 39 Am. St. Rep. 172. And finally, it is also well settled that a passenger carried free is still a passenger, as fully as if he pays fare. Railroad Co. v. Derby, 14 How. 468, 14 L. Ed. 502; Steamboat v. King, 16 How. 469, 14 L. Ed. 1019; Keep v. Railway Co. (C. C.) 9 Fed. 625. The basis of this rule is, that where a carrier, common or otherwise, undertakes to carry persons by an irresistible and highly dangerous agency public policy and safety require that it should be held to the greatest possible care and diligence. Whether the consideration for the transportation be pecuniary or otherwise, the personal safety of passengers should not be left to the sport of chance or the negligence of careless agents. Any negligence in such cases may well deserve the epithet of "gross." Mr. Justice Grier, in Railroad Company v. Derby, supra. In these three respects the case differs, and differs radically, from the one stated by counsel for the company.

What was the understanding between the parties, in view of the verdict? It was agreed or understood that the company would give the delegates a free street car ride. This implied that it would furnish safe and suitable track, cars and appliances, the necessary power, and to apply that power skilled employés, who should be under the control of the company. All the excursionists did, or could do, was to direct when to go and where to go; the very important how to go was necessarily left to the motormen and conductors. All the skill and experience were with the company, all the inexperience with the excursionists. Is it possible that it could be considered lawful or proper for a carrier to be permitted to turn over the control of irresistible power on a public track, in crowded thoroughfares, to a company of women, and be responsible only for the reckless or grossly negligent use of such power by its own skilled servants? It is impossible to consider the case apart from considerations of public policy. The company was charged with the custody and care of

human lives in a service voluntarily assumed, and it is of no importance whether it was in the technical relation of common carrier or not. Keep v. Railway Co. (C. C.) 9 Fed. 625, and note by Mr. Thompson. The trial court held, as matter of law, that the company was not a common carrier as to Mrs. Lawson, was liable only for a want of ordinary care, and that the burden of proof to show negligence was on the defendant in error, plaintiff below. That this was a position sufficiently liberal to the railway company already appears, and is also justified by the following considerations.

A public, common carrier of passengers is distinguished from private carriers by the franchises conferred upon it, and the obligations, restrictions, and liabilities with which it is charged, all flowing from considerations of public policy. It must carry all alike, and for a reasonable compensation, furnish reasonable accommodations, must continuously operate its line, and submit to reasonable regulation. It has the franchise of taking tolls, and, if a street railway corporation, the franchise of laying tracks in the streets, of stringing wires and setting poles, and the right of way over all private means of transportation. Owing these public duties, possessing these public franchises, and having the burden of caring for innumerable human lives, it is justly held to the highest degree of care and skill. Hollister v. Nowlen, 19 Wend. (N. Y.) 234, 32 Am. Dec. 455; Simmons v. Oregon R. Co., 41 Or. 151, 69 Pac. 440, 1022; Kennedy v. N. Y. C. R. Co., 125 N. Y. 422, 26 N. E. 626; Steamboat v. King, 16 How. 474, 14 L. Ed. 1019; Indianapolis v. Horst, 93 U. S. 296, 23 L. Ed. 898. This burden the company was bearing, and these public franchises it was employing, in carrying these delegates on this free ride. A passenger is one who undertakes, with the carrier's consent, to travel in the carriage of the latter, otherwise than in its service. Higley v. Gilmer, 3 Mont. 90, 35 Am. Rep. 450. It is the existence of a contract of carriage, express or implied, which distinguishes a passenger from an employé, a licensee, an invited person attending on a passenger, and a trespasser. 5 Encyc. of Law, 484, 485. Persons on trains who are present as friends or attendants of travelers are not passengers, and as to them the carrier owes only the duty of ordinary care. 5 Encyc. of Law, 518; Fetter on Carriers, § 237.

In view of these characteristics of common carrier and passenger, what was the relation of the parties? The carrier, engaged in the public service, deriving most if not all of its rights and privileges from the state or municipality, and charged with many duties imposed by public policy, gratuitously turns over the use of its facilities, its track, cars, power and servants, to a company of women, who unhesitatingly place themselves in its charge, relying on its skill and experience as a public carrier of passengers. Charged with the care of these precious lives, how can it be heard to urge that it lays down all the responsibilities incident to its important public position, and becomes like a private person doing a favor? Especially when its public and responsible position was the sole inducement to the so-called "private arrangement." At the very least the company was responsible for ordinary diligence, and liable for any want of ordinary

care. The charge was sufficiently liberal to it; and we find no error in this respect.

It is further insisted by plaintiff in error that as the complaint charges the company with liability as a common carrier of passengers, and negligence in that relation causing injury to Mrs. Lawson as a passenger, there was a fatal variance between pleading and proof. The trial court held that the relation was that of private carrier and passenger; that the company was not charged with the liability of common carrier, but for a want of ordinary care only; and that the burden of proof was on the defendant in error on all the issues of the case. This is assigned as error, on the ground that under the pleadings the company could be held liable only upon the theory of a violation of its duty as a common carrier, and not as a private carrier; that the company was only called on to defend as to the theory alleged in the complaint; that while a common carrier is required to use the highest degree of diligence a private carrier gratuitously is a mere mandatary, liable only for gross negligence; and that all the evidence offered was admissible because, if it had been supported by other evidence showing that the company was actually operating the cars, and had agreed in its public capacity to carry Mrs. Lawson, this would have tended to support the case made by the complaint.

From what has been already said, it is apparent that no mistake was made in pleading. In any event defendant was not injured nor misled. We adopt the opinion of the trial court on the motion for a new trial, as follows: The complaint stated a cause of action. The proofs established a cause of action. The defendant, claiming that there was a variance between the case stated in the complaint and that established by the evidence, presented instructions which would take the case from the jury. Section 394 of the Indiana Code (Burns' Ann. St. 1901) provides that no variance between the complaint and the evidence shall be deemed material unless the defendant is actually misled to his prejudice in maintaining his defense. The same section requires the defendant to call the court's attention to such fact, "and thereupon the court may order the pleadings to be amended on such terms as may be just." A similar provision of the Wisconsin Code was considered by the Court of Appeals of this Circuit in Walsh v. McColclough, 56 Fed. 778, 6 C. C. A. 114. See, also, the Tremolo Patent, 23 Wall., on page 527, 23 L. Ed. 97, and Graffam v. Burgess, 117 U. S., on page 194, 6 Sup. Ct. 686, 29 L. Ed. 839. The better considered Indiana cases are to the same effect. Louisville, etc., R. R. Co. v. Hollerbach, 105 Ind. 137, 5 N. E. 28, and Reddick v. Keesling, 129 Ind. 128, 28 N. E. 316.

Section 399 of the Indiana Code authorizes the court, at any time, in its discretion, to direct any material allegation to be inserted, struck out, or modified, to conform the pleadings to the facts proved, when the amendments do not substantially change the claim. So, even if it were conceded to be error for the court to construe the complaint as was done in the court's instructions, the error would be harmless, because such action of the court would amount to no more than if the court had directed the complaint to be amended to conform to the proofs.

This was the second trial of the case. The defendant failed to object to the plaintiff's evidence on the ground that the case being established by the proofs was at variance with the case pleaded, made no motion at the conclusion of the plaintiff's evidence, and at no time made any claim of surprise or prejudice, or that it was misled to its injury in maintaining its defense. The general nature of the plaintiff's claim was that his ward, at a named time and place, while lawfully on one of the defendant's cars, was injured through the negligence of the defendant's servants. There can be no question but that the present judgment is a complete bar to any further action on account of that injury.

The judgment of the Circuit Court is affirmed.