## J. R. Zachery *v.* Mobile & Ohio Railroad Co.

Common Carriers.  *Passengers.  Blind person.  Rule of company.*

> A common carrier of passengers cannot refuse to carry a person otherwise qualified, upon the sole ground that he is blind; and a rule of the carrier forbidding the transportation of all unattended blind persons is unreasonable in its application to such a person who is competent to travel alone and take care of himself.

From the circuit court of Clarke county.

Hon. E. A. White, Special Judge.

This case was once before in the supreme court, and is reported in 74 Miss., 520. It was there on appeal from a judgment sustaining a demurrer to plaintiff's declaration, and dismissing the suit. The cause was reversed, and, upon its remand to the court below, the railroad company, defendant, filed a special plea, setting up a rule of the company, which was in these words—viz.: "No sick, insane, imbecile, crippled, invalid or blind person will be received by conductors, or sold tickets by agents, for transportation unless accompanied by some person specially charged with their care and comfort while traveling;" and the plea further averred that Zachery, the plaintiff, was totally blind, and was unaccompanied by any person at the times mentioned in the declaration when he sought to become a passenger. To this plea the plaintiff demurred. The demurrer was overruled by the court below. The plaintiff then traversed the plea, a trial was had, upon which it was admitted by the defendant "that the plaintiff had as much skill and ability to travel without help or attendance as any blind man can have," but upon uncontradicted proof of the truth of

the special plea a verdict for the defendant was ordered by the court, and judgment followed accordingly. The plaintiff appealed therefrom to the supreme court.

*Buckley & Halsell* and *D. W. Heidelberg*, for appellant.

On the trial of the demurrer to the plea, the question is, whether, admitting the declaration and plea to be true, the new matter set forth in the plea furnishes any legal avoidance. One of the allegations of the declaration is that "the appellant had been riding on appellee's road for several years, pursuing his occupation, and had given no cause of complaint, and none had ever been made until January 25, 1896, and that the sole reason for rejecting him as a passenger was his blindness. This court decided, in this very case, 74 Miss., 520, that a person otherwise qualified, could not be rejected as a passenger for the sole reason that he is blind. Then the naked question was, whether, without any rule or regulation, "a person, otherwise qualified, may be rejected as a passenger for the sole reason that he was blind?" Now the naked question is, whether, with such regulation, a person, otherwise qualified, may be rejected as a passenger for the sole reason that he is blind? "The reasonableness of a rule adopted by a railroad company respecting its passengers, freighters or other persons using its road, is the test of its validity. The fact that it is lawful is not enough. A rule or regulation of defendant prohibiting from riding on cars of a person otherwise qualified, . . . not infirm, but robust, able to take care of himself, and to comply with the rules applying to passengers generally, because such person is blind, is unreasonable, and therefore void."

Defendant contends that it has a right to forbid plaintiff, though "qualified," though "robust," though "able to comply with every rule of the company made for other passengers," for the sole reason that he was blind, and it has passed a regulation forbidding him, on account of his blindness, to travel on

its cars. Such a regulation is not only unreasonable, but highly unjust. As to whether a particular blind person possessed the necessary qualifications for traveling on the trains without help, is a question which should be left to a jury; and the fact that a person is blind is not *ipso facto* a sufficient excuse for rejecting him as a passenger.

The question for this court to decide is whether a regulation is reasonable if it forbids all blind persons, including those otherwise qualified, robust, and able to comply with any rule made for other passengers, from riding on its trains, solely for the reason that they are blind? Suppose a blind passenger should desire to go from Mobile, Ala., to Cairo, Ill., a distance of many hundred miles, which can be traveled on defendant's road without change of cars. What reason could be urged in favor of a rule forbidding him the right to have a friend assist him safely on at the place of embarkation, and another to assist him off the train at the place of disembarkation? Could he not remain quietly and safely, and without annoyance to anyone, on the train after he had reached his seat? And if so, why put him to the unnecessary expense of paying the fare and of hiring another to go so long a distance for no purpose in the world? Such a rule would be to greatly increase the misfortunes of a class of people already afflicted above every other class; to deny many of them the right to earn a livelihood, and would in the highest degree be unjust and unreasonable. It has been the policy of this state to relieve in every possible way the unfortunate blind. Shall this court reverse this policy which is so highly commendable? Shall no unfortunate blind person be permitted to attend the blind institute at Jackson unless he hires another, and pays his fare and wages, to go to and from Jackson to extend him unnecessary aid? Shall the blind preachers of the state, some of whom are most worthy and efficient, be denied the privilege, to which they have been called of God, to attend and minister the word to their flocks unless they are able to hire an attendant and pay both his wages and

traveling expenses? Are the unfortunate blind to be denied a privilege that is granted to every other citizen, merely to suit the whim of a railroad company, and to thereby swell its coffers? Would anybody contend that such a regulation is neither unreasonable, immoral, nor unjust, and that it would operate on all alike? The mistake made by counsel for defendant, as before stated, is in assuming that not only a portion of the blind, but that all of them are helpless, as much so as the sick, and in applying to them the decisions of the courts touching the sick. There are possibly some blind who would need an attendant in traveling; there are others who possess as much ability to travel as many persons who can see. Such a man plaintiff was and is.

*J. A. P. Campbell*, for appellee.

The only question in this case is as to the reasonableness of a rule of the company requiring blind persons to have attendants as a condition of being received as passengers. The danger of harm to blind persons from railroad travel is very great, and the hazard to a railroad company of incurring liability for damages for injuries suffered by them, in their comparatively helpless condition, justifies the requirement of an attendant to entitle them to be passengers. Blindness is a deplorable infirmity, and of all the senses, save one, its absence renders one most helpless. If a blind man is received as a passenger, he must be cared for, in a measure, by the servants of the company. His other faculties may be ever so sharp, but his inability to see is apt to involve him in difficulty. It may be said, the denial of the right to go unattended is to add to the misfortune of the unfortunate blind, and punish him for it. But the blind are recognized as, in a measure, helpless, and are a distinct class, and, because of their great infirmity, are free from personal burdens imposed on those in normal condition, whereby to compensate, in a measure, for their deprivation. They are justly regarded as objects of the state's solicitude, and

none of earth's unfortunates more universally call forth individual charity and sympathy.   Railroads are operated for the normal person, and while the blind may be entitled to travel on them, it is a just requirement, rendered necessary by their helplessness, that they shall obtain the eyes of others to supplement their lack.   The additional cost to them is but an incident of their unfortunate condition.   Surely the misfortune of blindness, or of its incidents, should not be visited on the carrier. His duty is to carry; his right is to make reasonable rules as to passengers.   The requirement of an attendant of the blind not only is a just protective measure to the carrier, but a safeguard of the unfortunate in requiring a protector against injury from the perils of travel by rail.   The enforcement of the rule is a kindness to the blind, and if a hardship, a just one.   There is but little in the books bearing directly on the question.   What there is, as far as I have found, is in favor of the right of the carrier to require a blind person to have an attendant who can see.    5 Am. & Eng. Enc. L., 538 and note (2d ed.); Hutchinson on Carriers, secs. 669, 670; 14 Lea, 128, 150; 61 Miss., 8; 40 Miss., 374; 4 Col., 344; 52 Minn., 296; 42 Miss., 607.

If it is true that one unable to care for himself because of infirmity is entitled to more attention than one not in that condition, fairness demands that the carrier be allowed to serve the great public efficiently by requiring the helpless, who will travel, to make themselves as nearly as possible equal to the average person in ability to care for themselves, by securing the aid of an average person.   If this be a hardship, it is one resulting from no act of the carrier, but from the misfortune of the person, and not to be visited on the carrier.   The blind has to feel his way, has to depend upon the sense of touch instead of sight, and cannot keep up with the procession of well, active, bustling people.   Celerity of movement and precision of time are expected and required of railroads.   Their schedules are intended to meet the requirements and satisfy the demands of this fast age, and the question is whether the many

shall be accommodated or the unfortunate few whom all com-
miserate.  Pity for them should not derange the business of
the country or lead to a conclusion that carriers must receive
them as passengers on like terms with those possessed of all
their senses, unless the carrier is relieved from the obligation
of greater care for this class of passengers than for the whole.
The partially and entirely helpless should bear their misfortune
with quiet submission and resignation, and not attempt to com-
pete with the hustlers of this age of steam and electricity.  If
the blind may disregard the rule requiring an attendant, who
shall be denied, and what will be the result?  If this rule is
not reasonable, the declaration of the right of carriers to make
reasonable rules is a mockery.

The books are not agreed as to whether a carrier is obliged
to make any distinction in favor of the aged, infirm, or help-
less as passengers.  Some hold that the carrier must distinguish
in their favor, and probably all will agree that where the car-
rier knows of the helpless condition of the passenger an obliga-
tion exists to distinguish in his favor, and, surely, if this be
true, it is only reasonable that the carrier should relieve itself
by requiring the burden to fall on him whose condition creates
it, rather than bear it for him, when no consideration of justice
or propriety requires the carrier to bear it.  And, besides, it
should be remembered that trains are run on schedules, and the
loss of a few minutes caring for a blind person might derange
everything, and cause great destruction of life and property.

The rule is not an arbitrary one, or aimed at the unfortunate
because of their infirmity, but is founded in the experience of
its propriety.  It is the interest of carriers to have all the pas-
sengers they can carry.  It is not their desire or interest to ex-
clude any.  It is barely possible that some blind in some places
may be able to travel with safety, but there are all sorts of
blind people, with varying capacity, and all sorts of places, and
rules must be made for classes, and cannot be varied for ex-
ceptional persons or places.  It would not do to commit to depot

agents or conductors the determination of the question what blind persons may be received as passengers. The matter is the proper subject of a rule, and the fact being that the interest of the carrier coincides with the desire of the passenger to be carried, it must be accepted that the rule is not arbitrary or unreasonable, but just and proper.

Argued orally by *J. A. P. Campbell*, for appellee.

Whitfield, J., delivered the opinion of the court.

The demurrer to the special plea should have been sustained. The former opinion of this court stated this. The blind man in this case "had, at the times referred to in the declaration, when he applied for tickets and permission to travel on defendant's cars, as much skill and ability to travel without help or attendants as any blind man could have." The declaration avers that though blind, he was otherwise qualified to travel on the railroad cars, and, in fact, had traveled for several years constantly on appellee's railroad without objection. The demurrer to this declaration was overruled, and the present demurrer to the special plea presents the same objections, and, of course, should have been sustained. It is not every sick or crippled or infirm person whom a railroad regulation can exclude, but one so sick or so crippled or so infirm as not to be able to travel without aid. And so it is not every blind person, but one who, though blind, is otherwise incompetent to travel alone on the cars. Otherwise, we would be compelled to hold that one suffering from sickness, no matter how slight, or one who had lost an arm or leg, or one, no matter how active physically, and no matter how expert a traveler, though being blind, could be shut out by such a rule. And this ought not to be, and cannot be, sound law. We are asked to hold that a regulation that no blind person whatever shall travel unaccompanied by an assistant, no matter how skillful or expert a traveler he may have been, or may be, and no matter how perfectly

qualified in every other respect to travel on cars unaccompanied, is a reasonable rule. This cannot be sound. Each case must depend on its own facts, and the reasonableness of the refusal to sell the blind person a ticket must, on principle, depend not on a universal, arbitrary and undiscriminating rule like this one, but on the capacity to travel unaccompanied, of the particular blind person, as shown by the proof on that point in his case.

*Judgment reversed, demurrer to special plea sustained and remanded.*