Louisville & N. R. R. Co. v. Jordan.

CASE 50—ACTION TO RECOVER DAMAGES FOR BEING EJECTED FROM DE-FENDANT'S TRAIN—JAN. 14.

# Louisville & N. R. R. Co. v. Jordan.

112  473
121  141

APPEAL FROM HOPKINS CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

CARRIERS—AGREEMENT OF CONDUCTOR TO PUT INFANT PASSENGER OFF AT DESTINATION—LIABILITY FOR PERMITTING TO LEAVE TRAIN BE-FORE REACHING DESTINATION—AMENDMENT OF PETITION—EXCES-SIVE VERDICT—APPEARANCE.

1. The promise of a conductor to put off at her destination a passenger eight years of age did not make it his duty to act as her special attendant, to see that she did not leave her seat, and therefore the mere fact that one who was not iden-tified as the conductor assisted her from the train before she reached her station does not render the carrier liable.

2. As the original petition relied for recovery solely upon the ground that defendant forcibly ejected plaintiff from its train, and her testimony was to that effect, it was error, after the evidence was all in, to permit th · filing of an amendment al-leging that defendant had negligently permitted her to get off the train, especially as there was no evidence on which to base the amendment, and, if there had been, it would not have sup-ported a claim for damages.

3. A verdict for $250 was grossly excessive, as plaintiff was de-

Louisville & N. R. R. Co. v. Jordan.

tained only a few hours, during which time she was at the home of the station policeman, where she played with his children, and therefore could not have suffered great mental distress.

4. Defendant corporation, by prosecuting an appeal, entered its appearance, so that, on the return of the case to the trial court, that court will have jurisdiction of defendant's person, even though defendant's objection to the jurisdiction on the former hearing should have been sustained.

GORDON & GORDON, FOR APPELLANT.

### SYNOPSIS.

1. The Hopkins circuit court had no jurisdiction to try this case, because plaintiff was a non-resident of the county, and her alleged injury occurred in Christian county, and the "residence of the carrier" is in Jefferson county. The objection to the jurisdiction should have been passed upon by the lower court, as it was properly raised for his consideration by a plea to the jurisdiction; the lower court refused to pass on the question as it ought to have done and left the question to the jury, which ignored it. Willis v. Roberts, 90 Ky., 125; sec. 73 of the Code of Practice; Sherrill v. Railroad Co., 89 Ky., 302, sec. 66 of the Code of Practice; Harper v. Railroad Co., 90 Ky., 363, sec. 51, ss. 4 of Code of Practice; K. M. S. F. Co. v. Logan, 90 Ky., 366.

2. The affidavit of next friend is defective. C. & C. Bridge Co. v. Brennan, Sup. Ct., 16 Ky. Law Rep., 126.

3. Our motion for a bill of particulars should have been sustained, and plaintiff should have been compelled to fill blank in the petition.

4. On our motion immaterial and injurious matters should have been stricken from the petition.

5. Over our objection agent Davis was allowed to testify as to a special contract alleged to have been made with him for the carriage of plaintiff, without qualifying him as agent for that purpose, or had power to make such a contract; this was improper in the first instance, and when it afterwards appeared by uncontradicted evidence that he had no such power, then the court should have excluded that matter from the consideration of the jury.

6. As there is absolutely no proof of either damage or injury to the plaintiff, her person, rights, or property, our motion for a peremptory instruction should have been granted, and such instruction given.

Louisville & N. R. R. Co. v. Jordan.

7. Because the trial court allowed the plaintiff, over our objection to file an amendment to the petition, after all the evidence on both sides was heard and the case ready for submission to the jury, in which amendment, it is set forth that the alleged infraction of plaintiff's rights occurred in a manner entirely different from that originally alleged. The former petition alleged a willful and forcible ejection of plaintiff, and the amendment alleged that we negligently allowed her to leave the train of her own accord.

8. The acts of agents of the defendant in promising if they did promise to care for the comfort or safety of the plaintiff specially made without consideration and purely from motives of accommodation, do not render the company liable in damages, even if damage results from a negligent breach of those promises, 30 S. W. Rep., 153; 32 S. W. Rep., 42; 33 S. W. Rep., 585.

9. We cite the court to the similar case of Gage v. Ill. Cent. R. Co., 21 Southern Rep., 657a, Mississippi where it is held that no liability on the part of the defendant company arose under facts there stated to some extent like those in this appeal.

EDWARD W. HINES, FOR APPELLANT.

H. W. BRUCE, GORDON & GORDON, OF COUNSEL.

## POINTS AND CITATIONS.

1. The Hopkins circuit court had no jurisdiction unless plaintiff resided in Hopkins county. Sherrill v. Chesapeake, &c., R. Co., 89 Ky., 302.

2. The domicile of an infant child follows that of her widowed mother, and as plaintiff's mother resided in Nashville, Tenn., that was also the place of plaintiff's residence. Lamer v. Micon, 112 U. S., 452; Mills, Guardian, v. City of Hopkinsville, 11 Rep., 164; De Jarnett v. Harper, 45 Mo. App., 415.

3. Any agreement which the conductor may have made to give plaintiff special attention was not binding on the company. Sevier v. Railroad Co., 61 Miss., 8; Missouri, &c., R. Co. v. Kendrick (Civ. Ap. Texas), 32 S. W., 42; Nunn v. Georgia Railroad, 71 Ga., 710; Gage v. I. C. R. Co. (Miss.), 21 Southern Rep., 657.

4. The court erred in admitting testimony as to a special contract with the ticket agent, there being no allegation of such a contract.

5. It was error to permit an amended petition to be filed after all the evidence was in.

Louisville & N. R. R. Co. v. Jordan.

6. The court erred in instructing the jury that plaintiff was entitled to recover if defendant negligently suffered her to get of the train.

7. The verdict is excessive, as plaintiff at most was entitled to only nominal damages.

**C. J.** WADDELL, W. J. COX and CLIFTON J. PRATT, for appellee.

The plaintiff, Mattie Jordan, is an infant eight years of age, and resides with her married sister in Hopkins county, Ky. Desiring to visit her mother who resides in Nashville, Tenn., her brother-in-law, Thomas Warren, who had charge of her, saw the agent of defendant at Morton's Gap in Hopkins Co., where he resided and the agent assured him that the child would be safe in the conductor's charge, and no fear of danger could be reasonably anticipated. The agent on selling the ticket marked the word "Links" on it so as to give notice where the child was to be put off the train. The conductor admits that Warren put the child in his care and stated that he desired her put off at "Links" which is a station in Nashville. She was safely put on the train under these circumstances, and the conductor had notice of her seat in the car as well as the point on her destination. After the train passed Hopkinsville and was reaching Pembroke, the conductor discovered that Mattie was missing and telegraphed back to the agent at Hopkinsville. In the meantime the agent at Hopkinsville had discovered the child on the platform alone and crying. She was taken in charge by a policeman who carried her to his house and pacified her by placing her in company with his own child. She remained with him until midnight, when she was sent on the night train to Nashville, reaching that city about two o'clock at night. There was no one to receive her when the train arrived. A policeman finding her alone and crying, took her in charge, remaining with her a half hour or more when her brothers came and carried her to her mother. She says the conductor put her off and pointed him out on the trial as the man. He testified he did not put her off and did not know when she left the train. When the evidence was completed for appellee, the court permitted an amended petition to be filed, setting up in substance that the defendant at the time and place mentioned in the petition, negligently put her off at Hopkinsville, and negligently suffered her to get off the train at that place. The jury awarded her $250 in damages. We claim that the damages are not excessive and are compensatory only.

Louisville & N. R. R. Co. v. Jordan.

## AUTHORITIES CITED.

Civil Code, 134; 83 Ky., 416; Coddington v. Brooklyn, &c.,
R. R. Co., 102 N. Y., 66; Union Pac., R. R. Co. v. Fort, 17 Wall.
U. S., 553; Patterson R. An. Law, 231, sec. 236; Moreland v.
Boston R. R. Co., 141 Mass., 31; Sandham v. Chicago R. R.
Co., 38 Iowa, 88; 15 B. M., 377; 7 Bush, 680; 14 Bush, 494; 7
Bush, 617; A. & E. Ency. of Law, vol. 2, p. 750 and cases cited.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

This action was brought in the Hopkins circuit court
by Mattie Jordan, an infant eight years of age, by next
friend, against the Louisville & Nashville Railroad Com-
pany.   She alleged that she took passage on one of the
defendant's trains at Mortons Gap, a station in Hopkins
county, for Nashville, Tenn., placing herself under the spe-
cial care of the conductor, and that when the train arrived
in Hopkinsville, Ky., the defendant, through the gross
negligence of its servants in charge of the train, "wrong-
fully, forcibly, and in violation of her rights as a passen-
ger, put her off of the train at Hopkinsville," where she
was detained for several hours, awaiting the arrival of
the next passenger train for Nashville, and that she did
not arrive at the point of her destination until about 2
o'clock at night,—several hours after the time when she
would have arrived if she had been carried through on the
train on which she took passage,—and that by reason
thereof she had suffered great mental and physical pain
and anguish, and prayed judgment for $1,500.   The de-
fendant by its answer, alleges that the mother of plaintiff
resided in Nashville, Tenn., and that plaintiff resided with
her, and that by reason thereof the Hopkins circuit court
had no jurisdiction of appellee's alleged cause of action.
It further denied that it put plaintiff off its train, either
forcibly or otherwise.   A trial upon the issues resulted
in a verdict for appellee for $250.

Appellant moved for a new trial upon several grounds: First, because Thomas Warren, the next friend in whose name the suit was instituted, was permitted to testify that when he purchased the ticket at Mortons Gap he informed the local ticket agent that plaintiff was a small child, and asked him if there would be any danger of sending her by herself, and that he answered, "No," and informed him to "put her on the train, and tell the conductor where to put her off at, and that she would get there all right," and that he told him, so as to avoid any mistake, to write on the ticket the name "Links" (this being the station in Nashville where she wished to get off), and that when the train came in he put plaintiff on, and told the conductor to put her off at Links, and that he said "All right." Another ground relied on for a new trial is that the court erred in allowing the plaintiff, at the conclusion of the testimony, to file an amended petition in which it was alleged that the defendant, at the time and place mentioned in the original petition, and under the circumstances therein stated, negligently put her off the train at Hopkinsville, "and negligently suffered and permitted her to get off the train at that place," and that the court instructed the jury that if plaintiff's servants in charge of the train put plaintiff off, or negligently suffered her to get off, the train at Hopkinsville, they should find for plaintiff. And they further complained that the damages allowed by the jury were excessive, and given under the influence of passion and prejudice. The motion embraced, in addition to the grounds recited, several others, which we do not deem it important to consider.

The facts developed by the testimony are, in substance, that the mother of appellee, Mattie Jordan, was a widow residing in Nashville, Tenn.; that some time in July she

sent Mattie to the home of Thomas Warren, who had mar-
ried her older sister, and resided in Hopkins county, to
live with them and assist in taking care of their baby;
that, after residing with her sister for about two months,
her mother wrote to Mrs. Warren to send her home; that, in
conformity with the request, Warren bought her a ticket
and put her upon the regular passenger train for Nashville,
which left Mortons Gap at about half past 4 o'clock in the
afternoon on the 16th of September; that he called the at-
tention of the conductor of the train to her, and requested
that he should see that she was put off at Links Hotel, a
station in Nashville; and that the conductor assigned her
to a seat, and promised to put her off at the station indi-
cated. The plaintiff in response to the question as to how she
came to stop at Hopkinsville, responded "'that the conduct-
or, who wore a blue suit of clothes, put her off, and also took
off her basket, containing the clothes which she was carry-
ing;" but she failed to identify the conductor, when her
attention was called to him, as the man who put her off at
Hopkinsville, and testified on cross examination that her
sister had told her to say that she had been put off the
train by a man who wore blue clothes.    Her testimony is
hazy and unsatisfactory throughout.    The conductor tes-
tifies that Warren brought the plaintiff on the train when
he arrived at Mortons Gap, and told him that he wanted
her put off at Links station, in Nashville; that soon after
leaving Hopkinsville, he discovered that she was not on
the train, and that he stopped the train at the first station,
and sent a telegram to the agent at Hopkinsville, asking
him to take care of plaintiff and send her to Nashville on
the next train, and that he received a message from the
depot agent that he would do so; that when the train ar-
rived at Hopkinsville a number of people got off, among

whom were several children, but that he did not notice that plaintiff was one of them; that he did not promise to take any charge of plaintiff, except to see that she was put off at Links station, in Nashville; and that he assigned her to a seat, and told her to sit there until they arrived in Nashville. It further appears that appellee was put in charge of the station policeman during her stay in Hopkinsville; that he took her to his residence, near the depot, and gave her her supper; and that she played with his chlidren some three or four hours, until the arrival of the next train, which took her to her destination. Beyond the inconvenience and annoyance of the delay, it appears that no harm occurred to the plaintiff. There is nothing in the testimony which conduces to show that there was any understanding or agreement, either with the ticket agent or the conductor, that plaintiff should receive any special attention or care whilst on the train. Neither of them were informed by Warren that plaintiff did not have sufficient intelligence to occupy her seat during the journey. All that was asked by Warren, or promised by the conductor, was that he would see that appellee was put off at Links station, after the arrival of the train at Nashville. This was important, because there were two stations at Nashville and the friends of appellee expected to meet her at Links station. The law required of appellant that it should exercise the highest degree of care to safely transport appellee to her point of destination. But this duty did not require that appellant's conductor should act as a special attendant to the plaintiff during the journey, to see that she did not leave her seat. He had a right to presume that the friends and relations of appellee would not have consented to her going alone upon such a journey unless she was possessed of sufficient intelligence to

obey the instructions given her to occupy her seat until her destination was reached.     His duty was to see after the comfort and safety of the passengers generally, and not one in particular.     See Sevier v. Railroad Co., 61 Miss., 8, 48 Am. Rep., 74; Railroad Co. v. Kendrick (Tex. Civ. App..) 32 S. W., 42; Nunn v. Railroad, 71 Ga., 710, 51 Am. Rep., 284; Gage v. Railroad Co., (Miss.) 21 South. 657.

The original petition relied for recovery solely upon the ground that the defendant had forcibly ejected her from its train, and her testimony was to this effect; and it was error, after the evidence was all in, to permit an amendment alleging that the defendant had negligently permitted her to get off the train.     There was no testimony on which to base such an amendment, and, if there had been, it would not have supported a claim for damages against the defendant.     And the verdict for $250 was grossly excessive, in any aspect of the case.     No harm came to the plaintiff.     She was only detained on the journey for a few hours, and the mental distress incident thereto in a child of that age was not great, and was certainly much lessened by the fact that during her enforced stay in Hopkinsville she enjoyed the society of children of her own age in the hospitable home of the station policeman.

We deem it unnecessary to decide the question of jurisdiction relied on, as, under former rulings of this court, there can be no doubt that, upon the return of the case to the lower court, it now has jurisdiction to determine the issues raised by the pleadings.

For the reasons indicated, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.