Case 17.—ACTION BY E. E. ALLEN, A BLIND MAN, AGAINST
ILLINIOS CENTRAL RY. CO. FOR DAMAGES FOR RE-
FUSING TO SELL HIM A TICKET TO TRAVEL ON ITS
TRAIN WITHOUT AN ATTENDANT.—October 5.

## Illinois Central Ry. Co. v. Allen.

Appeal from Hopkins Circuit Court.

J. F. GORDON, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Re-
versed.

1. Carriers—Duty to Passenger—Performance of Contract of
   Carriage—The duty of a carrier of passengers is to attend to
   the comfort and safety of all its passengers alike, but not to
   furnish especial attention to any one in particular, unless
   under exceptional circumstances, such as sickness en route;
   but, if a carrier voluntarily accepts a helpless passenger
   without an attendant, it will assume the additional care
   commensurate with his needs.

2. Same—Duty to Receive Passengers—Infirm persons—A blind
   man, 77 years of age, applied to a railway agent for a ticket
   for a journey necessitating the changing of cars two or
   three times.   When he applied for the ticket, he was ac-
   companied by an attendant. He frequently took short trips
   involving no change of cars, and on these trips some one
   would assist him getting on and off the train. On taking a
   trip involving a change of cars, he depended on the assist-
   ance of chance acquaintances, or the employes in charge of
   the train. Held—That the carrier was justified in refusing
   to sell him a ticket unless he secured an attendant.

3. Same—Rules of Carrier—Validity—A rule of a railway com-
   pany forbidding the sale of tickets to persons physically
   unable to take care of themselves, unless accompanied by
   an attendant, is only for the guidance of its servants, and
   can not limit its responsibilities to the public, unless the
   rule can be justified by the principles governing the duties
   of carriers.

   TRABUE, DOOLAN & COX for appellant.

Illinois Central Ry. Co. v. Allen.

### POINTS AND AUTHORITIES.

1. A carrier is not required to see after the comfort and safety of any particular passenger. (L. & N. R. R. Co. v. Jordan, 23 Ky. Law Rep., 1730.)

2. A ticket agent in determining whether an applicant for transportation is a proper person to travel unattended is forced to determine the question from the appearance of the applicant and from such knowledge of the applicant as he may have. (I. C. R. R. Co. v. Smith, 36 Sou., 643; Croom v. C., M. & St. P. Ry. Co., 53 N. W., 1128, 5 Am. & Eng Ency. of L., 538; Owens v. Macon, &c., R. R., 63 L. R. A., 946; Zachary v. M. & O. R. R. Co., 41 L. R. A., 385.)

a. Error in submitting questions to the jury upon which there is no conflict of testimony. (I. C. R. R. Co. v. Smith, supra.)

b. Error of permitting recovery for pain of body or of mind. (Southern Ry. Co. v. Marshall, 23 Ky. Law Rep., 813.) .

3. Verdict of $300 excessive. (Southern Ry. Co. v. Marshall, 23 Ky. Law Rep., 813.)

RUBY LAFFOON and LEE GIBSON for appellee.

The proof shows that the reason for the refusal of appellant's agent to sell appellee a ticket was because he was blind. There was no inquiry made of appellee as to the condition of his health, or any effort to ascertain it from other sources. The proof shows he was in good health and unusually active for one of his age, and, though blind, could go anywhere in his neighborhood unattended. We submit the reasonableness of the rule relied upon by appellant was properly left to the jury by proper instructions of the court. (Cooley on Torts, p. 91; 85 Ky., 555; Ky. Stats., sec. 819; 81 L. R. A., 385; 36 L. R. A., 546.)

OPINION BY JUDGE BARKER—Reversing.

The appellee, E. E. Allen, was at the time this controversy arose 77 years old and totally blind. He resided near White Plains, Ky., and had a brother living in Ullen, Ill., who was in declining health. Having received a letter from his brother reciting the fact that the latter did not expect to live long, and requesting appellee to come to Ullen and see him before he died, the appellee applied to the ticket agent of appellant at White Plains for information

concerning the railroad fare, and as to which of the two possible routes by way of its line was the best for him to travel. After receiving this information appellee applied to the agent on the 3d day of November, 1903, for a ticket to Ullen, tendering the proper amount of money to pay the fare. The agent declined to sell him a ticket upon the ground that the company had a rule forbidding the sale of tickets to persons physically unable to take care of themselves, unless they were accompanied by an attendant. Being thus refused transportation, the appellee did not procure an attendant and go on his journey in obedience to the company's rule; but, finding that a neighbor, John Hanks, expected to make the journey about the coming Christmas, he waited and went with him on the 22d day of December, 1903, visited his brother and then returned home. Conceiving that the action of the appellant's agent in refusing to sell him a ticket under the circumstances recited was unlawful and oppressive, appellee instituted this action to recover damages, alleging that he had suffered great mental anguish and sorrow because he had been forced to wait fifty days before seeing his sick brother. The appellant, after its general demurrer to the petition had been overruled, filed an answer pleading its rule, and placing in issue all of the material allegations of the petition. A trial before a jury resulted in a verdict of $300 in favor of the appellee, and from the judgment based on this verdict the railroad has appealed.

We will consider, first, the duty of common carriers of passengers in regard to persons applying for transportation who are, or appear to be, unable to care for themselves. May a lunatic have a ticket thrust into his hand, and be delivered to the em-

Illinois Central Ry. Co. v. Allen.

ployes of a railroad corporation to be transported to his destination, and cared for by them on the journey? May one known to be intoxicated be imposed upon the employes of a common carrier without an attendant to care for him? Or may an old blind man demand that the corporation shall receive him as a passenger without an attendant, in order to make a long journey involving certainly two, and perhaps three, changes of cars? The answer to these questions is manifestly fraught with important consequences to carriers of passengers for hire.

In the case of L. & N. R. R. Co. v. Jordan, 112 Ky., 473, 66 S. W., 27, 23 Ky. Law Rep., 1730, we said: "The law required of appellant that they should exercise the highest degree of care to safely transport appellee to her point of destination. But this duty did not require that appellant's conductor should act as special attendant to the plaintiff during the journey to see that she did not leave her seat. * * * His duty was to see after the comfort and safety of the passengers generally, and not one in particular."

In Illinois Central Railroad Co. v. Smith, 37 South., 643, the Supreme Court of Mississippi say: "Primarily the affliction of blindness unfits every person for safe traveling by railway, if unaccompanied. No blind person without previous experience could possibly accommodate himself to the many exigencies incident to traveling by railroad, or guard himself against peril in boarding and alighting from trains, changing from one train to another, or threading his way in safety across the railroad tracks at crowded stations. Hence the rule which provides that every blind person is presumed to be, in the absence of proof of experience, unfit to travel alone, is not unreasonable; nor do we consider such a regu-

lation a hardship upon persons afflicted with blindness or other disabling physical infirmities. It is rather a safeguard thrown around them for their own protection. Therefore, when a blind person applies to purchase a ticket, being himself unknown to the agent, and that ticket is refused, the carrier is not liable by this act alone to be mulcted in damages; but, as before indicated, if the agent of the carrier knows, of his personal knowledge, of the competency to travel of the particular person, or if the fact of such ability is made known to him in any manner, and he still persists wantonly and arbitrarily in his refusal to sell the person desiring passage a ticket, the carrier may be made to respond in damages for his oppressive acts.''

In the case of Croom v. C., M. & St. P. Ry. Co. (Minn.), 53 N. W., 1128, 18 L. R. A., 602, 38 Am. St. Rep., 557, the rule is thus stated: ''Of course, a railroad company is not bound to turn its cars into nurseries or hospitals, or its employes into nurses. If a passenger, because of extreme youth or old age, or any mental or physical infirmities, is unable to take care of himself, he ought to be provided with an attendant to take care of him. But if the company voluntarily accepts a person as a passenger, without an attendant, whose inability to care for himself is apparent and made known to its servants, and renders said care and assistance necessary, the company is negligent if such assistance is not afforded.''

And in 5 Am. & Eng. Ency. of Law, 538: ''While persons who are ill have a right to enter and travel upon conveyances of a common carrier of passengers, nevertheless the carrier is not bound to accept as a passenger, without an attendant, one who, be-

cause of physical or mental disability, is unable to take care of himself.''

We think it a proposition too obvious to admit of refutation that the blind man who, without an attendant, successfully makes a long railroad journey involving several changes of cars, does so either because he is especially cared for and helped on his way by the kindness of chance acquaintances or by the aid of the employes of the carrier. Let any one imagine a totally blind man alighting on a strange platform for the purpose of changing cars amid the confusion arising from the shifting of trains, the blowing of whistles, the clanging of bells, the rolling of baggage trucks, and the hurried tramp of the feet of his fellow passengers, and he will need no extraneous evidence to realize that the afflicted passenger will be totally helpless, as well as in the most imminent danger of harm, without the kindly aid of some one who is not devoid of sight. The duty of the carrier of passengers for hire is to attend to the comfort and safety of all of its passengers alike, but not to furnish especial attention to any one in particular, unless, perhaps, under exceptional circumstances, such as accidental sickness or misfortune en route. If the carrier accepts a helpless passenger without an attendant, it will doubtless assume the additional care and responsibility commensurate with his misfortune and needs; but this is a burden it must assume for itself. The law does not impose it as an incident to the business.

The undisputed facts of the case at bar are that the appellee was, as already said, totally blind and 77 years of age. He desired to be transported for a distance of from 140 to 185 miles (depending upon which of two routes he took), involving two, if not three, changes of the vehicles of transportation;

one of the changes being to take a steamboat ride of twenty miles up the Ohio river. On both occasions that he came to the appellant's agent in regard to the proposed trip he was led by an attendant, and under these circumstances the agent firmly, but politely, refused to sell him a ticket unless he had an attendant. We think it entirely immaterial that appellee was in the habit of taking occasional short trips on appellant's road without an attendant. These involved no change of cars, and furnish no evidence of his ability to take the trip under contemplation. But we think appellee's own evidence abundantly shows that he was dependent upon the assistance of others even on these short trips. In speaking of these, in answer to a question of his counsel as to whether or not he traveled by himself, he said: "Folks on the train I was traveling on always helped me, if I needed help, and I was put off where my ticket called for. I would go often." Again: "Well, I generally visit the county seat about four to six times a year, and most of the time I come by myself. Sometimes somebody comes with me, and often I would come by myself and go to other places, too. Somebody would see me on the train and help me off, or the conductor would see me off." Speaking of his return home from Ullen, he said: "I got on the C., E. & I. road and went on that road to Mt. Vernon, and there the road was a mile to the t'other—a mile from one depot to the t'other one—and I made the change from one end of the town to the t'other. Went with a friend of mine. Got acquainted with the gentleman, and he said he would see me across from one depot to the t'other; and the gentleman went to the train with me, and I remained there awhile, and then went to

Nortonsville, and then went to White Plains that night.''

All of this shows that what he means by going by himself, without an attendant is that he went by himself, depending on the assistance of chance acquaintances or the help of the employes of the carrier. No one would think of disputing that a blind man who is put on a car can sit in his seat until he reaches his destination, if no change of cars is required. This involves no greater ingenuity than sitting in his own chair at home for a given length of time; and undoubtedly, if at his destination some one (perhaps the conductor) puts him safely off onto the platform, he will be so far all right. But this is not what we would term traveling without assistance. Certainly, if one can be sure of the attentions of chance acquaintances, or of the help of the employes of the carrier, he need not hire attendants to conduct him on his journey; but may he ask the carrier to run the risk of his getting this chance help? We think not. Suppose he should fail to meet any one sufficiently charitable to help him, and he should be injured; would it not be said with a great show of reason that, the carrier having accepted him as a passenger, knowing his infirmity, it therefore owed him a duty commensurate with protecting him from harm? This, we think, would clearly be the correct rule of law applicable to the suppositious case. It would seem to follow as a necessary consequence that the carrier has the legal right to protect himself from this additional responsibility by requiring the infirm traveler to secure the services of an attendant prior to starting on his journey.

We do not think it important that the appellant had promulgated a rule upon the question in hand,

although if it were, the existence of the rule was established without contradiction. The rule at best is only for the guidance of the employes. The corporation could not limit its duties and responsibilities to the public by an edict to its servants; and, unless the justifying principle of law be underneath it, the rule is void. The right of the company to protect itself from the additional hazard of transporting a blind man on a (considering his infirmity) to him perilous journey does not rest on a rule of its own, but on a controlling principle of law. It follows, from the view we have taken of the law of the case, that a peremptory instruction should have been awarded appellant at the conclusion of the testimony, and that it is unnecessary to review the other interesting questions raised by appellant on the record.

Wherefore the judgment is reversed, for proceedings consistent with this opinion.