HOGAN v. NASHVILLE INTERURBAN RAILWAY COMPANY.*

(*Nashville.* December Term, 1914.)

1. CARRIERS. Duty to transport. Persons under disability.

Any person is entitled to be received as a passenger on payment of fare, notwithstanding a seeming incapacity on his part to take care of himself, if, in fact, he is competent to travel alone without requiring other care than that which the law requires a carrier to bestow on all persons alike. The disability which will disentitle a person to transportation may be mental or physical, and in respect to physical disability the carrier is under no obligation to receive as a passenger one who, without an attendant, is unable because of extreme age or tender years to care for himself, and the same test applies as to other physical disabilities. (*Post, pp.* 249-251.)

Cases cited and approved: Owens v. Macon, etc., R. Co., 119 Ga., 230; Meyer v. St. Louis, etc., R. Co., 54 Fed., 116; Zachery v. Mobile & Ohio R. Co., 74 Miss., 520; Id., 75 Miss., 746; Illinois Cent. R. Co. v. Smith, 85 Miss., 349; Illinois Cent. R. Co. v. Allen, 121 Ky., 138.

2. CARRIERS. Duty to transport. Person using crutches.

Complainant, about twenty-six years of age, who had always had to walk with two crutches, but who for ten years had continuously traveled alone and unattended in trains, street cars, etc., and who only required ordinary care, could not be excluded from a passenger train on the ground of his physical disabilities. (*Post, pp.* 251, 252.)

3. CARRIERS. Carriage of passengers. Satutes. "Common carrier."

Acts 1875, ch. 130 (Shannon's Code, sec. 3046), abrogating the common-law rule as to rights of action for exclusion from public conveyances, and declaring that no carrier of passengers need carry or admit any person whom it chose not to, was abrogated by Acts 1897, ch. 10, sec. 14, declaring all corpora-

---

*Upon the duty of a carrier to accept as a passenger one physically or mentally disabled, see note in 26 L. R. A. (N. S.), 171.

On the question as to whether an interurban railroad company controlled by general railroad law in regard to the operation of railroads is a carrier of passengers, see note in 67 L. R. A., 637.

Hogan v. Railroad.

tions, etc., operating railroads to be "common carriers" which term depends upon whether the carrier may determine who he will carry or whether he is bound to carry all alike, and which, under Acts 1907, ch. 433, declaring that any incorporated interurban railroad company shall have the same powers and privileges as railroad companies, subject to the same duties and obligations, includes an interurban street railway company. (*Post, pp.* 252-256.)

Code cited and construed: Sec. 3046 (S).

Acts cited and construed: Acts 1875, ch. 130; Acts 1897, ch. 10; Acts 1907, ch. 433.

Cases cited and distinguished: McDuffee v. Portland, etc., R. Co., 52 N. H., 430; Indianapolis Traction, etc., Co. v. Lawson, 143 Fed., 834.

Cases cited and approved: Piedmont Mfg. Co. v. Columbia, etc., R. Co., 19 S. C., 353; McGregor v. Gill, 114 Tenn., 521; Chicago, etc., R. Co. v. Milwaukee, etc., R. Co., 95 Wis., 561; Diebold v. Kentucky Traction Co., 117 Ky., 146; Birmingham Mineral R. Co. v. Jacobs, 92 Ala., 187; Katzenberger v. Lawo, 90 Tenn., 238; Memphis News Pub. Co. v. Southern R. Co., 110 Tenn., 684; Coe v. Railroad, 3 Fed., 775; Chicago, etc., R. Co. v. N. Y., etc. (C. C.), 24 Fed., 516; C., etc., R. Co. v. Burlington, etc., R. Co., 34 Fed., 481; Whiteman v. Fayette Fuel-Gas Co, 139 Pa., 492; Railroad Co. v. Coal Co., 111 Ky., 960; Bourke v. Olcott Water Co., 84 Vt., 125.

4. **INJUNCTION. Subjects. Common carrier's abuse of franchise.**

A complaint alleging that a common carrier's refusal to accept complainant was a persecution of complainant for having brought a suit for damages against it and an attempted intimidation showed a palpable abuse of a public franchise, which a court of equity would enjoin. (*Post, p.* 257.)

5. **INJUNCTION. Subjects. Continuing wrongful acts.**

A complaint alleging that a common carrier had wrongfully refused to accept complainant as a passenger and threatened to continue such wrongful act set out a right to relief by injunction, on the ground that a single action was a more adequate remedy

Hogan v. Railroad.

than an action or actions at law for damages. (*Post, pp.* 257-259.)

Cases cited and approved: Ainsworth v. Munoskong, etc., Club, 153 Mich., 185; Colliton v. Oxborough, 86 Minn., 361; Ladd v. Osborne, 79 Iowa, 93.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

FITZGERALD HALL, for appellant.

PITTS & McCONNICO, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This case stands for trial on bill of complaint and a demurrer thereto; the appeal being that of complainant, Hogan, from a decree of the chancery court of Davidson county sustaining the demurrer.

The complainant in his bill alleges that he is about twenty-six years of age, and resides near the city of Nashville; that he is a student and instructor in Vanderbilt University, in that city, and has been accustomed to use the cars of the defendant company almost daily since the line of that company was constructed for transportation into the city; that he has since infancy been lame as a result of infantile paralysis, and has been forced to walk ever since with two crutches; that for the last ten years he has continually traveled alone and unattended, riding trains, street cars, in-

terurban cars, and goes everywhere a sound and healthy man can go; that in the use of defendant company's cars he was never injured but once, and that then his injury was due to the gross negligence of the servants of defendant; that in so riding he has never caused any trouble, or asked or received any assistance; that he "acts as other passengers, and has been treated as such;" that when ordinary care is exercised "there is no more danger of injuring him than any other person;" that, following the injury above referred to, complainant brought suit against defendant; that thereafter rumors reached him that the defendant was about to withdraw from him the right of passage on its cars; that yet later a communication was received by him from the company's general manager, as follows:

"Nashville, Tenn., April 23, 1914.

"Mr. Woodall Hogan, R. F. D. No. 2, Brentwood, Tenn.—Dear Sir: We regret to notify you that on and after May 1, 1914, we will decline to convey you as a passenger on our line, unless you are at all times accompanied by an attendant. Your physical infirmity is of such a nature as to cause a continued source of possible injury to yourself and as a possible liability as against us. You are also advised that our trainmen and ticket agents will be notified not to receive you as a passenger unless you are accompanied by an attendant. We regret that conditions are such as require

this action but deem it necessary, as well for your protection as for the protection of ourselves.

"Very truly yours,

"[Signed]    Meade Frierson,

"General Manager."

The bill of complaint further recites: That on May 1, 1914, complainant, tendering the usual fare, demeaning himself properly and offering to comply with all the usual and necessary conditions to become a passenger, presented himself to defendant for carriage on its line, but was absolutely refused; that in his work he is compelled to go into Nashville every day, and that his only means of transportation is defendant's line; that defendant is a common carrier.

That the refusal to receive him as a passenger is a persecution of complainant for not dropping the above-mentioned suit and an attempted intimidation, with a view to forcing him to abandon his legal rights, and arbitrary and in violation of defendant's charter.

The demurrer interposed set out the following grounds:

(1) That the bill discloses such physical infirmity on the part of complainant as that it was not a part of defendant's duty at common law to receive him for passage.

(2) That by force of a valid statute defendant had a right to decline to carry complainant for any reason whatever deemed sufficient by it.

(3) That there is no case made for resort to injunctive process; complainant having an ample remedy at law.

The chancellor sustained the several grounds of the demurrer.

The rule, broadly stated, is that any person desiring transportation shall be entitled to be received as a passenger on payment of the fare, notwithstanding a seeming incapacity on his part to take care of himself, if, in point of fact, he "is competent to travel alone without requiring other care than that which the law requires the carrier to bestow on all persons alike." Hutchinson on Carriers (3 Ed.), section 966.

In the application of the rule to concrete instances the authorities are not in exact agreement, but the points of difference are narrow ones.

The disability claimed to disqualify may be mental or physical. Thus, while a common carrier may not lawfully refuse absolutely to carry persons who are insane, it may do so where the proposing passenger is not properly attended or guarded. *Owens* v. *Macon, etc., R. Co.,* 119 Ga., 230, 46 S. E., 87, 63 L. R. A., 946; *Meyer* v. *St. Louis, etc., R. Co.,* 54 Fed., 116, 4 C. C. A., 221.

In respect to physical disability, the carrier is not under obligation to receive as a passenger a person who without an attendant is unable, because of extreme age or tender years, to care for himself; and the same test applies to other physical limitations. The carrier may

refuse to carry unless the applicant be in charge of one fit to serve as attendant.

The clearest and most comprehensive statement of the rules governing is that of the supreme court of Mississippi in a series of cases dealing with blind persons who offered themselves for passage. Blindness is by that court held to be *prima facie* a disqualification; that presumedly the affliction of blindness unfits a person for safe travel by railway, if unaccompanied; that a showing of experience or ability to travel alone on the part of the offerer brought to the knowledge of the railroad company's agent may serve as a basis of liability on the part of the carrier for a refusal to accept him.

That court, on a point pertinent to the case in hand, said:

"We are asked to hold that a regulation that no blind person whatever shall travel unaccompanied by an assistant, no matter how skillful or expert a traveler he may have been, or may be, and no matter how perfectly qualified in every other respect to travel on cars unaccompanied, is a reasonable rule. This cannot be sound. Each case must depend on its own facts, and the reasonableness of the refusal to sell the blind person a ticket must, on principle, depend, not on a universal, arbitrary, and undiscriminating rule like this one, but on the capacity to travel unaccompanied of the particular blind person."

It was therefore held, where a blind person sued, and in his declaration averred that for several years he had

traveled on defendant company's cars in the transaction of current business, and had never given cause of complaint to any of its servants, and that no objection had been offered to his riding on the company's train before the date of the exclusion complained of, that this statement of his cause of action was not demurrable, the court holding that it was sufficiently shown that plaintiff was able to take care of himself as a passenger. *Zachery* v. *Mobile & Ohio R. Co.*, 74 Miss., 520, 21 South., 246, 36 L. R. A., 546, 60 Am. St. Rep., 529; Id., 75 Miss., 746, 23 South., 434, 41 L. R. A., 385, 65 Am. St. Rep., 617; *Illinois Cent. R. Co. v. Smith*, 85 Miss., 349, 37 South., 643, 70 L. R. A., 642, 107 Am. St. Rep., 293. And see, also, *Illinois Cent. R. Co.* v. *Allen*, 121 Ky., 138, 89 S. W., 150, 11 Ann. Cas., 970.

We have not been cited any case that deals with a disability claimed to exist because of lameness or infirmity of the two lower limbs, making the use of crutches necessary. But we think it clear that the reasoning in behalf of disqualification of such a person for acceptance must be less obvious than in the case of a blind person. It is a matter of common knowledge that, where a man is deprived of the use of his lower limbs, the enforced constant use of his arms increases their strength, enabling him, especially in the case of a youth, to handle himself with considerable facility and safety on crutches. Such persons are seldom attended, and seldom need to be. To deny the right to be so carried to such as complainant is shown to be by the bill of complaint would be to put an unwarranted handicap on

a class of men capable of being serviceable to society, and therefore on society itself, which the defendant company, if a common carrier, is under obligation to serve.

We readily decline to give assent to the contention of the railway company that, as a proposition of law, a man may be denied passage merely because fate has placed on him the necessity of using two crutches in locomotion; and we hold that the bill of complaint makes a case of improper exclusion of Hogan.

But it is insisted by the defendant company that it is not under the common-law duty of a common carrier in respect of the matter of accepting complainant as a passenger. This contention is based on a statute passed by the legislature of this State in 1875, doubtless to operate by way of a hedge against the enforcement of the "Civil Rights Bill" passed by the congress of the United States, which bill at that date had not been declared unconstitutional by the supreme court of the United States.

Acts 1875, ch. 130 (Shannon's Code, section 3046), is as follows:

"The rule of the common law giving a right of action to any person excluded from any hotel, or public means of transportation, or place of amusement, is hereby abrogated; and hereafter no keeper of any hotel, or public house, or carrier of passengers for hire, or conductors, drivers, or employees of such carrier or keeper, shall be bound, or under any obligation to entertain, carry, or admit any person whom he shall, for any rea-

son whatever, choose not to entertain, carry, or admit to his house, hotel, carriage, or means of transportation, or place of amusement; nor shall any right exist in favor of any such person so refused admission, but the right of such keepers of hotels and public houses, carriers of passengers, and keepers of places of amusement and their employees to control the access and admission or exclusion of persons to or from their public houses, means of transportation, and places of amusement, shall be as perfect and complete as that of any private person over his private house, carriage, or private theater, or places of amusement for his family."

On the other hand, it is urged by complainant that, if this act be constitutional, it was impliedly repealed by a later statute (Acts 1897, ch. 10), which undertakes to regulate railroads as carriers of passengers and freight. In section 14 of this last-named act it is provided that all corporations, trustees, receivers, and lessees operating railroads in this State are declared to be common carriers. A later section makes it unlawful for any corporation to subject any person to any undue or unreasonable prejudice or disadvantage.

We are of opinion that, if the defendant company be a railroad within the meaning of this statute, it, along with commercial railroads, was classed as, and onerated by the last-quoted statute with the duties of, a common carrier.

What, then, is the necessary import of the statutory phrase declaring railroad companies to be "common carriers?"

" 'Common,' in its legal sense, used as a description of the carrier and his duty and the correlative right of the public, contains the whole doctrine of the common law on the subject. The defendants are common carriers. That is all that need be said. All beyond that can be no more than an explanation or application of the legal meaning of 'common' in that connection." *McDuffee* v. *Portland, etc., R. Co.,* 52 N. H., 430, 457, 13 Am. Rep., 72; *Indianapolis Traction, etc., Co.* v. *Lawson,* 143 Fed., 834, 74 C. C. A., 630, 5 L. R. A. (N. S.), 721, 6 Ann. Cas., 666.

The true test of the character of a party, as to whether he is a common carrier or not, is his legal duty and obligation with reference to transportation. Is it optional with him whether he will or will not carry; or must he carry for all? If it be his legal duty to carry for all alike, then he is subject to all those stringent rules which, for wise ends, have long since been adopted and uniformly enforced, both in England and all the States, upon common carriers. *Piedmont Mfg. Co.* v. *Columbia, etc., R. Co.,* 19 S. C., 353, 364.

This court, in *McGregor* v. *Gill,* 114 Tenn., 521, 86 S. W., 318, 108 Am. St. Rep., 919, in drawing the distinction between public or common carriers and private carriers, said that a common carrier of passengers is one who undertakes for hire to carry all passengers indifferently who may apply for passage.

The result of the declaration in the act of 1897 was to place on railroad companies at least the burdens of common carriers as those burdens are defined and pre-

scribed by the common law. No longer may that particular class of carriers claim the benefit of the act of 1875 abrogating the rule of the common law touching the acceptance of those offering to become passengers.

But is the defendant, an interurban railway company, to be treated as being in the class with ordinary trunk or commercial railroad companies thus regulated? Here, again, the legislature has given the answer.

By Acts 1907, ch. 433, it is provided that any interurban railroad company incorporated under the laws of this State shall have and possess the same powers and privileges as are conferred by the general incorporation act upon railroad companies, and subject to the same general duties and obligations. The classification thus made by our legislature is in line with a strong tendency manifested by the courts of several States to judicially declare interurban railroads to belong to this class. *Chicago, etc., R. Co.* v. *Milwaukee, etc., R. Co.,* 95 Wis., 561, 70 N. W., 678, 37 L. R. A., 856, 60 Am. St. Rep., 136; *Diebold v. Kentucky Traction Co.,* 117 Ky., 146, 77 S. W., 674, 63 L. R. A., 637, 111 Am. St. Rep., 230; *Birmingham Mineral R. Co.* v. *Jacobs,* 92 Ala., 187, 9 South., 320, 12 L. R. A., 830; *Katzenberger* v. *Lawo,* 90 Tenn., 238, 16 S. W., 611, 13 L. R. A., 185, 25 Am. St. Rep., 681.

We come now to the consideration of complainant's right to the remedy of injunction by which to restrain defendant company from excluding him from its passenger cars.

It is said in 6 Pom. Eq. Juris., section 633, that a writ of injunction, sometimes even mandatory in form, is granted to compel a carrier to transport freight or to furnish proper transportation facilities, and that unjust and illegal discrimination on the part of public service corporations may be so relieved against, and our case of *Memphis News Pub. Co.* v. *Southern R. Co.,* 110 Tenn., 684, 75 S. W., 941, 63 L. R. A., 150, is cited.

In that case the bill of complaint was one for injunctive process to compel a common carrier to desist from discrimination, but the form of the injunction sought is not disclosed in the opinion, and it does not discuss that phase of the litigation; any disposition of the point being *sub silentio.*

However, in *Coe* v. *L. & N. Railroad* (C. C.), 3 Fed., 775, Baxter, circuit judge, held that even a mandatory injunction was grantable to require a railroad company defendant to extend transportation facilities to complainant; and see *Chicago, etc., R. Co.* v. *N. Y., etc., Railroad Co.* (C. C.), 24 Fed. 516; *Chicago, etc., R. Co.* v. *Burlington, etc., R. Co.* (C. C.), 34 Fed., 481.

In several cases injunctions were granted to compel a public service corporation defendant to furnish a supply of gas, water, etc., to the complainant, which supply had been wrongfully cut off. *Whiteman* v. *Fayette Fuel-Gas Co.,* 139 Pa., 492, 20 Atl., 1062; *Louisville, etc., R. Co.* v. *Pittsburg, etc., Coal Co.,* 111 Ky., 960, 64 S. W., 969, 55 L. R. A., 601, 98 Am. St. Rep., 447; *Bourke* v. *Olcott Water Co.,* 84 Vt., 125, 78 Atl., 715, 33 L. R. A. (N. S.), 1017, Ann. Cas., 1912D, 108.

These cases relate to the protection of a complainant in his property rights. We are cited no case which approves of the issuance of injunctive process to protect one in his right to be accepted and carried as a passenger by a public carrier; but we have not that bald question to decide.

The bill of complaint presents two phases in its allegations which, if sustained by proof to the satisfaction of a chancellor, might warrant the award of an interlocutory injunction:

First, it is alleged that the carrier's refusal to accept complainant for carriage is a persecution of complainant for having brought a suit for damages against the company and in attempted intimidation. This would, if established, evidence a palpable abuse of a public franchise that a court of equity should not hestitate to restrain by the exercise of its highest prerogative with promptitude.

Again, it is shown by the bill of complaint that the carrier threatens to continue the wrongful acts described therein. The modern authorities make it manifest that the rules of equity have grown less strict in respect to interference by a court of equity by way of injunction to restrain repeated wrongful acts, and even purely mandatory injunctions are now granted on clear showing made, where a defendant is guilty of a continuing wrong or threatens repeated perpetration of wrongs which would for remedy at law give rise to a multiplicity of suits, pending the determination of

which the wrongs would continue. If a threatened wrong consists of a single act, which will be temporary in effect, the complainant may well be left to his remedy at law for damages. But if persistent repetition of a wrong is threatened, especially by a quasi public corporation involving discrimination as between citizens, equity will move to afford in a single action its more adequate remedy of injunction. *Ainsworth* v. *Munoskong, etc., Club,* 153 Mich., 185, 116 N. W., 992, 17 L. R. A. (N. S.), 1236, 126 Am. St. Rep., 474, 15 Ann. Cas., 706; *Colliton* v. *Oxborough,* 86 Minn., 361, 90 N. W., 793; *Ladd* v. *Osborne,* 79 Iowa, 93, 44 N. W., 235; 1 High on Injunctions, 5.

Here the remedy sought may be by an injunction prohibitory in form operating on future conduct, and not, strictly speaking, to restore a *status* by undoing a past act, and when this may be done a court of equity is less chary in exercising the power. It should, of course, in granting interlocutory injunctions of this character, act only after each party, complainant and defendant, has had an opportunity to present his case by affidavits, in an effort by the court to prevent an abuse of its process.

Deeming the bill of complaint to be framed in a manner that will admit of such procedure and relief, we are of opinion that the court below erred in sustaining this and the several grounds of demurrer interposed by the defendant company, and discussed in this opinion.

Hogan v. Railroad.

Reversed, with remand to the court below for further proceedings not inconsistent with the rulings herein embodied.